TERESE G. WELSH, APPELLANT, v. GEORGE W. WELSH, RESPONDENT.—
93 S. W. (2d) 264.

St. Louis Court of Appeals. Opinion filed April 7, 1936.

Motion for rehearing overruled April 28, 1936.

*Banister, Leonard, Sibley & Susman* for appellant.

*Dubinsky & Duggan* for respondent.

1008

1010

SUTTON, C.—Plaintiff commenced this action in the Circuit Court of the City of St. Louis, on August 22, 1934, to recover a delinquent balance on installments due under a contract made and entered into between plaintiff and defendant, on November 16, 1932, as follows:

"This Agreement, made and entered into this 16th day of November, 1932, by and between George W. Welsh, of the City of St. Louis, Missouri, hereinafter called First Party, and Terese G. Welsh, his wife, of the same place, hereinafter called Second Party, Witnesseth, that said parties, for the purpose of adjusting, rendering certain and settling all questions as to pecuniary and property rights and claims of every kind and nature, arising or which may arise between them out of every matter whatsoever, agree as follows:

"First Party agrees to pay to Second Party wherever Second Party may be, for support and maintenance and provision in the nature of alimony during the life of both parties, and beginning the first day of

December, 1932, the sum of Three Hundred Dollars ($300.00) in cash a month, in not less than two installments of not less than One Hundred Fifty Dollars ($150.00) each on the first and sixteenth day of each and every month.

"This amount of payment is based on the present salary, wages, and income represented by First Party to be now received by him, which is Eight Hundred Fifty Dollars ($850.00) a month salary, wages and income (exclusive of Seventy-five Dollars ($75.00) a month now allowed First Party by his employer for the up-keep of his automobile, and represented by First Party to be no more than actually necessary and used for such purpose). Should First Party *bona fide* suffer, and actually involuntarily sustain what appears to be a more or less permanent reduction in salary, wages and gross income, to the extent of at least twenty per cent (20%) or more of the amount now received as herein recited, then First Party, during the continuance of such reduction, may reduce the payments per month required herein, to the extent of one-half of the per cent of such reduction in salary, wages and income; that is, for example, should First Party suffer such reduction in salary, wages and income to the extent of twenty per cent (20%) of that now received or enjoyed as herein mentioned, he may reduce the payments intended herein by ten per cent (10%), and so on, while such reduction obtains. Should First Party obtain or ever receive an increase or increases in salary or wages or income of twenty per cent (20%) or more, over what he is now obtaining as above mentioned, he shall forthwith increase the payments herein mentioned, to the extent of one-half of the per cent of such increase or increases while such increase or increases obtain.

"Should First Party claim such reduction in salary, wages and income, he shall, before making any deduction from the payments herein intended, furnish satisfactory proof to Second Party, or to anyone whom she may designate, that such reduction has actually and *bona fidely* and involuntarily taken place, and that the same bids fair to be more or less permanent, by presenting affidavits of himself and his employers, or of the head officers of any corporation or corporations by which First Party may be employed, or from which he may receive wages, salary or income, stating under oath all the facts as to First Party's salary, wages and income, and by affording an inspection of First Party's income tax return or returns, and by affording an inspection of the books of any employer or employers so far as they may relate to, or bear upon the salary, wages or income of First Party, but if Second Party or her attorney or agent is not satisfied with such evidence presented, Second Party shall not be precluded from having the question found and determined by any court of competent jurisdiction.

"Should First Party receive an increase in salary, wages or income as above stated, he shall forthwith notify First Party and increase her payments as above provided. Second Party shall be given promptly, all information at any time, at her request, or the request of any one authorized to act for her, bearing upon whether or not First Party has had such increase in salary, wages or income, and in case of dispute, the question may be found and determined by any court of competent jurisdiction.

"To assure the payment to Second Party of support and maintenance and provision in the nature of alimony, not only during the life of both parties, but in case First Party should predecease Second Party, First Party agrees to continue paying promptly when due, all premiums on the Five Thousand Dollar ($5,000.00) New York Life Insurance Company policy, dated December 28, 1915, to mature in twenty (20) years, until the policy has fully matured and all premiums thereon are fully paid, and to pay to the insurance company issuing the policy, or successor, the loan or loans (represented to be $2,090.00) heretofore made to First Party on such policy, beginning such payments not later than December 20, 1935, and continuing in annual payments not later than December 20th each year thereafter of not less than $200.00 each, so that the whole of such loan and interest shall be fully paid and discharged not later than December 20, 1945, and to seek or make no further loans of any kind or nature on or in connection with such policy. Further, that First Party shall forthwith convert the present Ten Thousand Dollar ($10,000.00) five (5) year term life policy of the Massachusetts Mutual Life Insurance Company, dated November 20th, 1931, on the life of First Party, into an ordinary life policy on the life of First Party, or take out such ordinary life policy in such company with all the usual benefits and provisions of such standard life policies, and pay promptly when due all premiums on such converted or new policy, and to seek or make no loan or loans thereon; and further, that First Party shall forthwith either convert the present Ten Thousand Dollar ($10,000.00) ten (10) year term life policy of the Central States Life Insurance Company, dated November 25th, 1924, on the life of First Party, into an ordinary life policy on the life of First Party or take out such ordinary life policy in such company, or in any other high standing, standard insurance company, to be approved by Second Party, with all the usual benefits and provisions of such standard high-class policies, and pay promptly when due one-half of all premiums on such converted or new policy, and to seek or make no loan or loans thereon. Second Party is to pay promptly when due the other half of such premium on the last mentioned policy. If when such premium becomes due Second Party has not sent her said one-half of the premium to First Party or has not

paid same directly to the insurance company, First Party may pay the whole of such premium and deduct the portion to be paid by Second Party from the next payment or remittance made by First Party to Second Party.

"Second Party shall be forthwith appointed and constituted during her life the sole, irrevocable beneficiary in each and all of such policies, and any policies substituted therefor, with sole and absolute control over same, with the sole right and power to borrow money thereon, should the payments required of First Party herein be' not fully made as and when due. Should Second Party borrow on any one or more of such policies only to the extent that First Party is then in arrears in payments, First Party shall be liable to repay and shall repay such amount or amounts so borrowed with interest to the insurance company or companies from which the same is borrowed, or Second Party may require such amount or amounts so borrowed, with interest, to be paid to her by First Party and she shall repay such loan or loans with interest. Should Second Party ever borrow on any one or more of such policies in excess of what may then be due her under this agreement, First Party may pay such excess in the manner herein provided to be paid Second Party directly to the insurance company or companies from which the loan was obtained so as to fully pay and discharge such loan or loans, and may withhold from Second Party further payment or payments hereunder until such excess so borrowed by Second Party, and interest, if any, charged by the insurance company or companies, has been fully offset.

"Second Party shall before or at the time of borrowing any money from any insurance company as aforesaid, notify First Party, either in person or by writing mailed to the last known address of First Party.

"This agreement contemplates that First Party shall keep in existence at all times, with all premiums paid, and in accordance with the terms of this agreement, at least $25,000.00 (or so much thereof as the present contemplated premium payments will purchase, as mentioned below) of insurance in high class companies on the life of First Party for the protection of Second Party. Should any of the policies herein referred to or contemplated, or any part thereof, be cancelled, cease to be binding on the companies or to exist or be effective or become depreciated in value, First Party shall forthwith apply for and take out other like insurance in high class standard companies in lieu of such policy or policies, subject to and to conform to all the terms and conditions of this agreement. Should the premium required on such substituted policy or policies then taken out be greater in amount than the premium contemplated herein to be paid by First Party, and the said policy or policies cease to exist or be

effective through no fault of First Party, such party shall be bound only to take out at least as much of such said insurance as the premium herein contemplated to be paid by First Party will then purchase.

"All such policies shall be delivered forthwith to and remain with Second Party, and the insurance companies issuing such policies shall be requested to notify Second Party within five days if any premium due is not paid by First Party. First Party shall send forthwith to Second Party as payments are made, his receipt received for the payment of such premium, and he shall send or mail to Second Party as payments are made, his receipt or receipts received for payments by First Party to the New York Life Insurance Company of the said loan made by First Party on such policy.

"Should First Party at any time fail to make any payments of premium or repayments of said loan, or fail to make any other payment or payments herein required; Second Party may forthwith enter suit against First Party, to collect or compel such payments, or she may advance such payment or payments then due to any insurance company or companies or in repayment of said loan to said New York Life Insurance Company, and collect same from First Party forthwith, with interest, and if compelled to file any suit against First Party to collect or compel any payments, she shall be entitled to collect all costs and expenses, including reasonable attorneys' fees.

"As the said insurance policies are intended to provide for the Second Party throughout her life, particularly in the event First Party should die before Second Party, First Party hereby expressly waives any right or claimed right should the status of said parties change and they cease to be husband and wife, to change or modify during the life of Second Party, the beneficiary or beneficiaries in any one or more of said policies contemplated herein.

"Should the bond of matrimony between First Party and Second Party ever be severed by divorce, and should Second Party thereafter remarry, First Party, if not in default under this agreement, may immediately up such remarriage of Second Party cease making all payments hereunder, and change the beneficiary in all said policy or policies to the parties' daughter, Harriett Welsh.

"First Party hereby relinquishes, releases and waives any and all interest, right or claim of every kind and nature to any and all property or estate or interest of Second Party, whether now in possession, or owned, or hereafter acquired, and Second Party shall hold, possess and enjoy same free from any and all such rights and claims, the same as if she were a *femme sole*.

"Second Party, in consideration of the covenants and agreements herein contained to be kept and performed by First Party, and so long as the same shall be faithfully kept and performed by First

Party, accepts the provisions above contained and release of all rights and claims in and to her property, in satisfaction of all claims of any kind, whether for dower interest, support and maintenance or alimony, which she may have against First Party, and so long as and when such provisions shall be faithfully kept and performed, waives any further claim to any property or estate of First Party whether now in possession or hereafter acquired.

''The said parties agree to promptly execute, acknowledge and deliver at all times any paper or papers that may be requested by any of the insurance companies, or that may otherwise be necessary or desirable to fully and completely carry out at all times the intent and spirit of this agreement.''

After the execution of this contract, defendant made the monthly payments called for therein until January 15, 1934, when, without previous notice to plaintiff, and without presenting any affidavits, or exhibits, or proof of any change in salary, wages, or income, reduced his payments to $200 a month. He also provided at first the insurance policies called for in the contract, but made his last payments of insurance premiums early in 1934, and on or about July or August of that year notified plaintiff that he would not pay any more insurance premiums whatever, and discontinued paying same, and also discontinued paying the interest on the loan of $2,090, which he had made on the policy with the New York Life Insurance Company, and has never paid any of these items since.

This action is brought to recover $750, the balance accrued and unpaid on monthly installments at the commencement of the action, less a credit of $61.50 for insurance premiums paid by defendant, with an attorneys' fee in the sum of $500 for services in the prosecution of the action. The trial, without a jury, resulted in a judgment for the defendant, and plaintiff appeals.

At the time of the execution of the contract in suit, respondent and appellant were husband and wife, but were living apart from each other. A long time before the execution of the contract, negotiations looking to a final and full property settlement and release of all rights between the parties had been undertaken.

Before the negotiations were completed and the contract signed by the parties, respondent commenced a divorce suit against the appellant in the Circuit Court of the City of St. Louis. Said suit was commenced on November 1, 1932, and was returnable to the December term of that year. Personal service was had on the appellant, and on December 5, 1932, she filed her answer and cross bill. Nothing was said in the cross bill about the salary, wages, income, or property, of the respondent, or about alimony or support or maintenance for the appellant, or about her needs or requirements, and nothing was asked for her support, maintenance, or alimony. The contract was

not introduced in evidence, though it was filed with the court papers. The cross bill charged the respondent with intolerable indignities, and asked for a divorce, with the custody of Harriett E. Welsh, a daughter, nineteen years old, born of the marriage. On December 6, 1932, the court gave judgment for appellant on her cross bill as follows:

"Now, at this day, comes the defendant in person, and by her attorney; the plaintiff, although duly called, comes not, but is represented in court by counsel, and by leave of court dismisses his petition, and it appearing to the court that the plaintiff is in default for want of pleading to defendant's cross-bill, it is now ordered by the court that said cross-bill be taken against the plaintiff as confessed; and this case coming on for hearing on defendant's cross-bill, the same is submitted to the court upon the pleadings; and the court, after hearing the evidence herein, being satisfied that defendant is the innocent and injured party, and entitled to the relief prayed for in her cross-bill, doth order, adjudge and decree that she be absolutely and forever divorced from the bonds of matrimony existing between plaintiff and defendant, and that she be restored to all rights and privileges of an unmarried person, and that she have the care, custody and control of Harriett E. Welsh, nineteen years of age, a child of said marriage, until further order of court, and that the plaintiff pay the costs of this proceeding, and that execution issue therefor. Stipulation as to property rights, support, etc., filed and approved."

After the contract of the parties was approved by the court, a memorandum signed by counsel for each party was given to the clerk, as follows:

"Plaintiff appears by his attorneys, but fails to present witnesses or evidence. Defendant appears in person and by her attorneys. Evidence of defendant in support of her cross-bill heard. Defendant granted decree of divorce from George W. Welsh on her cross-bill, with custody of her daughter, Harriet Welsh. It appearing that the parties have heretofore entered into an agreement dated November 16, 1932, to fully and finally dispose of all property rights between them, and looking to the continued support and maintenance of defendant by plaintiff, a copy of which stipulation is identified, approved and filed."

The sole question involved here is whether or not an independent action at law, such as this, will lie to recover on the contract entered into between the appellant and respondent, on November 16, 1932. Respondent contends that this contract was merely advisory in its nature, and that its approval by the court in the divorce suit became the judgment of the court for alimony, subject to subsequent modification just as is a judgment for alimony entered upon evi-

dence adduced, and that, therefore, appellant's sole remedy is by resort to an application or motion for execution on that judgment.

Respondent, in support of his contention, places much reliance on what was said by this court, speaking through Judge BECKER, in Brown v. Brown, 209 Mo. App. 416, 239 S. W. 1093, as follows:

"The stipulation of the parties in the instant case with reference to alimony was merely advisory. Whilst an agreement between the parties for alimony and a division of their property will, in the absence of fraud or imposition, generally be adopted by the court, yet the embodying in the decree for divorce such provisions for alimony is just as much the judicial finding and judgment of the court as the granting of the divorce, and, under our statutes and our adjudicated cases, any order which provides for monthly alimony is subject to review, and from time to time, on proper motion filed in the original action, the court has full jurisdiction to make such alterations as to the allowance of such alimony and maintenance as the then circumstances and conditions in its judgment warrant."

An examination of the opinion in that case will show that what was there said was said with reference to a record very different from the record involved here. In that case the contract between the parties provided that "a judgment for alimony in the sum of $75 per month shall be entered against the plaintiff and in favor of the defendant, said $75 per month alimony to be paid on the first of each and every month thereafter in a lump sum, while the defendant remains single and unmarried," and the judgment in that case so far as it related to alimony was as follows: "Thereupon the parties hereto filed and submitted to the court a stipulation, upon consideration of and in accordance with the terms of which it is further ordered and adjudged and decreed, that the defendant recover as for her alimony, and until the further order of the court the sum of $75 per month, so long as the defendant remains single and unmarried." It will be observed that in that case the contract expressly provided that a judgment for alimony should be entered by the court in accordance with the terms of the contract, and the judgment was expressly so entered.

In the present case there is no such provision in the contract, and no such judgment to be dealt with. There is no provision in the contract that a judgment for alimony should be entered in accordance with its terms, and the only reference made in the judgment to the contract is this: "Stipulation as to property rights, support, etc., filed and approved." It is not ordered or adjudged that appellant recover of respondent any money, or that respondent pay appellant any money, as alimony or otherwise. No duty whatever is imposed on respondent.

Hayes v. Hayes (Mo. App.), 75 S. W. (2d) 614, also relied on by

respondent, is likewise clearly distinguishable on its record from the case at bar. In that case the contract obligated the defendant to pay to plaintiff for her support and for the maintenance of their adopted daughter $332 a month for nine months, and after that $300 per month, and in addition such sum as might be necessary not exceeding the sum of $400 a year for the education of the adopted daughter. It recited the fact of plaintiff's claim that she had grounds for divorce and was about to file a suit for divorce. It stated defendant's willingness to make such provision for the future support of plaintiff and the adopted daughter as his means would permit or justify. It obligated him to pay all attorneys' fees and court costs accrued in the prosecution of the divorce action, and finally it obligated plaintiff to ask for alimony in accordance with the agreement, and to ask the court for the care and custody of the adopted daughter. The court in its judgment in the divorce suit recited the filing of the contract, and ordered "that the allowance for alimony and for support and maintenance and education of the adopted daughter be in accordance therewith," and set out the contract in haec verba. The distinction between that case and the case at bar is obvious.

In Moore v. Crutchfield, 136 Va. 20, the court had under review a judgment, in a divorce suit, containing the following clause:

"And it appearing that all property interests and alimony have been fully settled and agreed upon between the plaintiff and defendant, as appears from an agreement filed herewith marked Exhibit 2, the court doth, in all respects, approve said settlement as to the said alimony and property rights of the respective parties hereto, provided, however, that the said defendant shall, in addition thereto, pay the costs of this suit, and the fee of $500 to Gunn & Mathews, counsel for the plaintiff."

In holding that such approval of the contract entered into between the parties to the divorce suit did not amount to a judgment for alimony, the court said:

"There is no alimony awarded or allowed the wife. The fact that the court approved the agreement made between the parties partly in lieu of alimony does not make the order of court a decree for alimony. There is nothing in that decree that can give it the force and effect of a judgment against the husband for the amounts agreed by him in the contract to be paid to the wife, a result that follows from the usual decree ordering payment of alimony. [Isaacs v. Isaacs, 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648.]

"A decree of court approving a contract between parties providing for payments in lieu of alimony and for the settlement of the property rights of the parties, is not a decree for alimony, and the court has no jurisdiction in the divorce suit to enforce compliance with

the contract nor to alter its terms upon subsequent application of one of the parties. [19 Corpus Juris, p. 251 and notes; Ibid., p. 340; Pryor v. Pryor, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep., p. 102.]" [See, also, to the same effect: De Hart v. De Hart (Va.), 180 S. E. 307; Barnes v. American Fertilizer Co., 144 Va. 692, 130 S. E. 902; Baxter v. Baxter (Calif.), 40 Pac. (2d) 536; Schnerr v. Schnerr, 128 Cal. App. 363; Keene v. Keene, 241 Ill. App. 414.]

The contract with which we are here concerned is not a mere agreement for the payment of alimony, and there is nothing in it to indicate that the parties intended it to be made the basis of a judgment for alimony in the divorce suit. On the contrary, its provisions tend strongly to show that it was not so intended. The provisions made therein for the wife are in lieu of alimony, and in lieu of dower and all other interests and claims of appellant in and to respondent's property and estate, whether now in possession or hereafter acquired. The very first clause of the contract recites that it is made by the parties "for the purpose of adjusting, rendering certain, and settling all questions as to pecuniary and property rights and claims of every kind and nature arising or which may arise between them out of every matter whatsoever." Provision is made not only for payments for the support of the wife during the life of the parties, but provision is also made for her support after the death of the husband and for the support of the daughter after the death of the wife. Provision is also made for changes in the amounts of the payments required in the event of changes in respondent's salary, wages, or income, and it is clearly contemplated that the payments required must be made whether the parties are divorced or not. Moreover, the contract expressly provides that if the husband fail to make any payments therein required to be made the wife may forthwith enter suit against him to collect or compel such payments, and if compelled to file any such suit she shall be entitled to collect all costs and expenses, including reasonable attorneys' fees. It is inconceivable that this contract was intended by the parties to it to become the basis for a judgment for alimony subject to subsequent modification on application of one of the parties. It was clearly intended to be a complete and final property settlement between the parties.

That no judgment for alimony in the divorce suit was intended by the parties is further borne out by the circumstance that appellant in her cross-bill made no demand for alimony.

Respondent appears to attach some importance to the memorandum signed by counsel for the parties in the divorce suit and handed to the clerk after the court announced its approval of the contract. We can not see that this memorandum in any way supports the respondent's view. It rather supports the contrary view. It shows that the parties had, by the contract entered into between them, "fully and finally

disposed of all property rights between them," and had provided for "the continued support and maintenance" of the appellant by the respondent, and that counsel merely desired to have the court's approval of the contract.

Contracts, such as this, entered into between husband and wife for the settlement of their property rights, are valid and binding, in the absence of fraud or collusion, but, if the contract is collusive, or intended to promote the dissolution of marriage, it is void as against public policy. [Crenshaw v. Crenshaw, 276 Mo. 471, 208 S. W. 249; O'Day v. Meadows, 194 Mo. 588, 92 S. W. 637; Speck v. Dausman, 7 Mo. App. 165.] So, too, a collusive contract is a bar to a divorce suit. So that a court, in disposing of such a suit, is vitally concerned with the character of any contract entered into between the parties looking to the settlement of their property rights. A concealment of any such contract from the court tends to produce collusion, and might well be regarded as evidence of collusion. In view of this, it appears to have become a matter of common practice in divorce suits for the parties to submit their settlement contracts to the court in order that the court may determine whether or not the provisions are fair and equitable, or are collusive, or designed to promote the dissolution of marriage. It was obviously for this purpose that the contract involved in the present action was submitted to the court in the divorce suit. The contract having been thus submitted received the approval of the court, and the divorce was granted, but the approval of the contract did not merge the contract in the judgment, or amount to a judgment for alimony in accordance with the terms of the contract.

We conclude that the present action was properly brought on the contract.

The Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded, with directions to enter judgment in favor of plaintiff against defendant for $688.50, plus interest at six per cent on each delinquent payment from the time it became due, together with a reasonable attorneys' fee.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court.

The judgment of the circuit court is reversed and the cause remanded with directions in accordance with the recommendation of the Commissioner. *Hostetter, P. J.*, and *McCullen, J.*, concur; *Becker, J.*, not sitting.