**STATE of Missouri, ex rel. Chris KOSTER, Missouri Attorney General, Appellant,**

v.

**Hortense CAIN, Respondent.**

**No. WD 74734.**

Missouri Court of Appeals,
Western District.

Nov. 13, 2012.

Laura E. Elsbury, Jefferson City, MO, for appellant.

Peter P. Fiore, Jr., St. Louis, MO, for respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

The State appeals from a trial court judgment that sustained a motion to quash a garnishment filed by Hortense Cain ("Cain") and garnishee, Stone, Rich & Fiore ("Law Firm"). The State contends that the trial court erroneously treated the garnishment as an attempt to enforce a contempt judgment against Cain when the garnishment was in fact intended to enforce an underlying consent judgment against Cain. The State also argues that the trial court erroneously concluded that the State's garnishment interrogatories violated the attorney-client privilege. We reverse and remand this matter for further proceedings consistent with this Opinion.

**Factual and Procedural Background**

Cain was incarcerated in a state prison under the custody of the Missouri Department of Corrections. Cain was injured while participating in a work-release program during her incarceration. Cain sued the Missouri Highways and Transportation Commission ("the Commission").[1] The State filed a Missouri Incarceration Reimbursement Act ("MIRA") petition against Cain, seeking reimbursement for the costs of her incarceration pursuant to sections 217.825 through 217.841.[2]

Before Cain's suit against the Commission was resolved, the State and Cain settled the MIRA case. On April 12, 2006, a consent judgment signed by Cain and the State was filed in the trial court ("Consent Judgment").[3] The Consent Judgment entered judgment "in favor of the State and against Defendant Hortense Cain, in the amount of $168,078.85, as reimbursement for the cost of Defendant Hortense Cain's care and custody while incarcerated in a state correctional facility." [4] The Consent Judgment imposed a lien in favor of the State against 50 percent of any amount due to Cain from her suit against the Commission (excluding attorney's fees and costs incurred), up to the total amount of the judgment. The Consent Judgment provided that the trial court "shall retain jurisdiction over this matter to ensure compliance with the above provisions until all of the parties' obligations have been completed."

Cain and the State filed an addendum to the Consent Judgment on April 18, 2006. The addendum reflected the State's additional agreement to file a satisfaction of the Consent Judgment upon its receipt of 50 percent of the amounts due to Cain from the Commission (up to $168,078.85), or should Cain receive no money from her suit against the Commission.[5] The adden-

---

1. For additional information regarding the accident that gave rise to this suit, see *Cain v. Missouri Highways & Transportation Commission*, 239 S.W.3d 590 (Mo. banc 2007).

2. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

3. "A consent judgment is not a judicial determination of rights, but is an agreement of the parties and is not appealable. A consent judgment is contractual in nature. It should be accorded the same force as other judgments." *Household Fin. Corp. v. Jenkins*, 213

S.W.3d 194, 196 (Mo.App. E.D.2007) (citations omitted).

4. The amount of the Consent Judgment reflects the amount certified by the Missouri State Treasurer as "the amount due the state for the cost of care of an offender." *See* section 217.841.2.

5. At the time of the addendum, the Commission had appealed a judgment entered in favor of Cain following a jury trial. *Cain*, 239 S.W.3d at 592.

dum to the Consent Judgment effectively limited the source from which the State could collect its $168,078.85 judgment to the net proceeds, if any, from Cain's suit against the Commission.

On March 1, 2010, the State filed a motion for order of contempt and for an *ex parte* order with the trial court. The State alleged that an arbitration panel heard evidence and awarded Cain a judgment against the Commission in the amount of $235,021,[6] and that the Commission issued a check in that amount payable to Cain, her attorneys, and the Missouri Department of Social Services. The State claimed that it had received a settlement statement from Cain's attorney, Peter Fiore ("Fiore"), about the amount due to be paid to Cain, which the State attached to its motion for contempt. The settlement statement indicated that Cain was due the net amount of $84,218.19 following reduction of her settlement by attorney's fees and costs. The State alleged that after receiving the settlement statement, it sent a letter to Fiore demanding payment of $42,109.09 (50 percent of the amount due Cain). The State asserted that Cain "has refused and continues to refuse to pay [the State] in accordance with the Court's judgment," referring to the Consent Judgment. The State asked the trial court to issue a show cause order to require Cain to appear before it to demonstrate why she should not be held in contempt for failing to comply with the terms of the Consent Judgment. The State also requested an *ex parte* order restraining any person or legal entity in possession of the proceeds from Cain's suit against the Commission from disposing of those proceeds.

The trial court entered an order to show cause and an *ex parte* order that restrained Cain, Fiore, and Law Firm from disposing of $42,109.09 of the net proceeds from Cain's settlement with the Commission. After Cain did not appear for the show cause hearing, the trial court entered a judgment of contempt ("Contempt Judgment"). The Contempt Judgment found that Cain had refused to comply with the terms of the Consent Judgment and that as a result, Cain was in contempt of the Consent Judgment. The Contempt Judgment ordered Cain "to immediately deliver $42,109.09 to the State of Missouri to avoid punishment by this Court in the form of fines or imprisonment or both."

Following entry of the Contempt Judgment, Cain filed a special entry of appearance, and a motion to set aside the Contempt Judgment. Cain alleged that the trial court's order to show cause had not been properly served on her and that the Contempt Judgment was void for lack of personal jurisdiction. The trial court rejected Cain's motion, reasoning that the Consent Judgment, by which Cain had agreed to be bound, expressly provided that the trial court "shall retain jurisdiction over this matter to ensure compliance with the above provisions until all of the parties' obligations have been completed." The trial court thus found that it had personal jurisdiction over Cain to enter the Contempt Judgment, notwithstanding the absence of personal service of the order to show cause on Cain.

On February 23, 2011, the State filed a garnishment application. The application identified Law Firm, c/o Fiore as the garnishee, and identified the Consent Judgment as the judgment it was seeking to

---

**6.** The Missouri Supreme Court reversed an earlier judgment in favor of Cain and against the Commission as a result of instructional error. *Cain,* 239 S.W.3d at 597. Though not entirely clear from the record, it appears the remanded matter was then resolved by arbitration.

collect. The application indicated that the "original amount of [the] judgment" the State was seeking to collect was in the amount of $42,109.09. The State's application for garnishment was accompanied by "standard form" interrogatories.[7]

Law Firm and Cain filed a motion to quash the garnishment. They claimed the garnishment actually sought to enforce the Contempt Judgment and that the Contempt Judgment was void because the trial court did not have personal jurisdiction over Cain. Further, they claimed that the garnishment interrogatories sought attorney-client privileged information.

The trial court[8] entered a judgment and order sustaining the motion to quash the garnishment ("Judgment"). The Judgment concluded that the State's garnishment was "in aid of execution" of the Contempt Judgment, not the Consent Judgment, and that the Contempt Judgment was void as it had been entered without personal jurisdiction over Cain.[9] The Judgment further concluded that the garnishment interrogatories "may require [Law Firm] to reveal privileged and confidential matters," in violation of the attorney-client privilege.

The State appeals.

## Standard of Review

 The trial court's Judgment was entered as a part of a proceeding in aid of enforcement or collection of an underlying judgment. It was thus a special order, defined as "orders in special proceedings attacking or aiding the enforcement of [a] judgment after it has become final in the action in which it was rendered." *GUI, Inc. v. Adams*, 978 S.W.2d 515, 517 (Mo. App. W.D.1998) (internal quotation marks omitted). Special orders after final judgment are appealable pursuant to section 512.020(5).

 "Appellate review of a trial court's decision on a motion to quash [a garnishment] requires that the judgment be affirmed unless there is not substantial evidence to support it, the judgment is against the weight of the evidence, or it erroneously declares or applies the law." *Keipp v. Keipp*, 385 S.W.3d 470, 473, 2012 WL 3079060 (Mo.App. W.D.2012). If the motion to quash a garnishment is based on the alleged invalidity of a judgment, we exercise *de novo* review. *State v. Superior Mfg.*, 373 S.W.3d 507, 509 (Mo.App. W.D. 2012).

## Analysis

The State raises three points on appeal. First, the State argues that the trial court erroneously quashed the garnishment based on the conclusion that the garnishment was in aid of execution of the Contempt Judgment, which was void for lack of personal jurisdiction. Second, the State argues that the garnishment was instead sought in aid of execution of the Consent

---

7. The standard form interrogatories were preprinted and were in the form approved as Form No. 13 by the Missouri Supreme Court. *See* Missouri Court Rules, Form No. 13.

8. The trial judge who entered the Contempt Judgment and who denied Cain's motion to set aside the Contempt Judgment was the Honorable Paul C. Wilson. Thereafter, the case was reassigned to the Honorable Daniel R. Green, who entered the Judgment that is the subject of this appeal.

9. The Judgment made no reference to the earlier, and contrary, finding by the Honorable Paul C. Wilson that personal jurisdiction over Cain to entertain the State's contempt motion existed by virtue of Cain's assent as expressed in the Consent Judgment to the trial court's retained jurisdiction over the parties and the proceedings to ensure compliance with said judgment.

Judgment, a valid judgment that was not too indefinite to be enforced. Third, the State argues that the trial court erroneously quashed the garnishment based on the conclusion that the garnishment interrogatories sought attorney-client privileged information.

## Points One and Two

We combine our analysis of the State's first and second points on appeal as each requires us to determine the judgment the garnishment sought to enforce.

The State's application for garnishment identified the judgment it was seeking to enforce. In the garnishment application, the State specified the "Date Judgment Entered Against Debtor" as April 12, 2006, the date of the Consent Judgment. Cain argued, however, that because the garnishment application indicated the "Amount of [the] Judgment" to be $42,109.09, the specific amount Cain was ordered to pay by the Contempt Judgment, the garnishment was actually sought to enforce the Contempt Judgment. The trial court accepted Cain's argument and quashed the garnishment because it found the Contempt Judgment to be void for lack of personal jurisdiction. The trial court's conclusion was legally erroneous.

"Civil contempt is intended to benefit a party for whom relief has been granted by coercing compliance with the relief granted." *Smith v. Pace*, 313 S.W.3d 124, 130 (Mo. banc 2010). Thus, civil contempt represents a non-exclusive means by which a judgment creditor can seek the court's assistance in encouraging a judgment debtor to comply with an existing judgment on threat of fine or imprisonment. A judgment creditor is also permitted to attempt to directly collect a judgment through attachment or garnishment proceedings.

"Garnishment in aid of execution is an incidental remedy by which a judgment creditor may collect [a] judgment by reaching the judgment debtor's property in the hands of a third party." *Orem v. Orem*, 149 S.W.3d 589, 592–93 (Mo.App. W.D.2004). "A garnishment proceeding is governed generally by chapter 525 and Rule 90" and is " 'purely a creature of statute in derogation of the common law.' " *Moore Auto. Group, Inc. v. Goffstein*, 301 S.W.3d 49, 53 (Mo. banc 2009) (quoting *State ex rel. Eagle Bank & Trust Co. by Roderman v. Corcoran*, 659 S.W.2d 775, 777 (Mo. banc 1983)). Because garnishment represents a means by which a judgment creditor seeks to enforce or collect a judgment, it is axiomatic that "[a] valid judgment ... [is an] indispensable prerequisite[ ] to a valid garnishment." *Orem*, 149 S.W.3d at 593. "Thus, if there is no underlying judgment in the case, there can be no valid execution and hence nothing to support a garnishment proceeding." *Id.*

Here, the State initially sought to cajole Cain into compliance with the Consent Judgment by seeking an order of contempt. Thereafter, the State filed a garnishment application. The State had every right to attempt collection of the Consent Judgment utilizing both means. The timing of the garnishment, standing alone, does not require us to conclude that the garnishment sought to enforce the Contempt Judgment.

It is compelling, however, that a garnishment proceeding can only be initiated to enforce a *final* judgment. Here, there is no dispute that the Consent Judgment was a final judgment. The same cannot be said about the Contempt Judgment.

The Contempt Judgment ordered Cain "to immediately deliver $42,109.09 to the State of Missouri *to avoid punishment by*

*this Court* in the form of fines or imprisonment or both." (Emphasis added.) Cain did not purge herself of contempt by complying with the directive to deliver payment to the State. Nonetheless, the Contempt Judgment's threat of punishment was never enforced, as no order of confinement to prison was ever entered, and no fine was ever imposed. *See Emmons v. Emmons,* 310 S.W.3d 718, 722 (Mo.App. W.D.2010) ("Enforcement of a contempt order can take the form of imprisonment or the imposition of a fine."). As a result, the Contempt Judgment is not a final judgment. *Id.* ("[A] civil contempt order is not final and appealable until it is enforced."). As the Contempt Judgment is not a final judgment, it could not have been executed upon by a garnishment. *See In re Estate of Keathley,* 934 S.W.2d 611, 614–15 (Mo.App. E.D.1996) (holding that garnishment in aid of execution of a contempt order was invalid because the contempt order was not yet subject to execution as it was not a final, appealable judgment). Since the Consent Judgment was not subject to execution, the trial court erroneously disregarded the State's designation of the Consent Judgment as the judgment it was seeking sought to enforce.

Law Firm and Cain nonetheless argue that the trial court correctly re-characterized the garnishment as an attempt to execute on the Contempt Judgment. They claim the garnishment application's identification of the "original amount of the judgment" as the amount Cain was ordered to pay to purge her contempt in the Contempt Judgment confirms that the State only filed the contempt proceeding to clarify an indefinite Consent Judgment. We disagree.

■■■■■ In order for a judgment to be susceptible of enforcement, it must be "'sufficiently certain ... without requiring external proof.'" *Traxel v. Traxel,* 295 S.W.3d 215, 219 (Mo.App. W.D.2009) (quoting *In re Marriage of Brooke,* 773 S.W.2d 496, 499 (Mo.App. S.D.1999)). "A judgment for money must specify with certainty the amount for which it is rendered, and an indefinite judgment that requires some external proof or another hearing for execution is void and unenforceable." *Hopkins v. Hopkins,* 626 S.W.2d 389, 392 (Mo. App. E.D.1981). Here, the Consent Judgment specified with certainty the amount for which it was rendered. It unambiguously stated that "Judgment and Order in the above-captioned cause *shall be entered* in favor of the State and against Defendant [Cain], *in the amount of $168,078.85,* as reimbursement for the cost of [Cain's] care and custody while incarcerated in a state correctional facility." (Emphasis added.) Determination of the amount of the monetary judgment did not require external proof or another hearing.

It is true that the State agreed to limit collection of its monetary judgment to 50 percent of Cain's net recovery from the Commission. And it is clear that the State also agreed to file a satisfaction of judgment if Cain recovered nothing from the Commission. However, these terms in the Consent Judgment do not constitute the monetary judgment, but are instead negotiated limitations on the State's ability to collect on its judgment. We thus conclude that the Consent Judgment was sufficiently definite to be enforced.[10] The State's

---

**10.** Notwithstanding the contrary position taken in their Brief, Cain and Law Firm conceded during oral argument that the Consent Judgment is not too indefinite to be enforced, and that had the garnishment application identified the original amount of the judgment as $168,078.85 (instead of $42,109.09), they would not be arguing that the garnishment sought to enforce an indefinite judgment.

designation of an amount on the garnishment application that was less than the full amount of the Consent Judgment reflects nothing more than the State's effort to abide by its obligation to accept less than the full amount in satisfaction of the judgment.[11]

Even were we to construe the State's agreement to limit the source of collection as sufficient to render the monetary judgment indefinite (which we do not), resort to **external proof** was not required to determine the precise amount the State agreed to accept in satisfaction of its judgment. The law is settled that if a "judgment does not state the sum for which it is rendered, it is enforceable nevertheless *if the amount is ascertainable from the record.*" *Hopkins*, 626 S.W.2d at 392 (emphasis added). Here, the State's motion for contempt attached Law Firm's summarization of the net amount due Cain from the settlement with the Commission ($84,218.19). The summarization was a part of the record as it was attached to the State's motion for contempt. The State's garnishment application sought to recover 50 percent of this sum, or $42,109.09, consistent with the Consent Judgment. The summarization was made a part of the record and was reviewed by the trial court in connection with its entry of the Contempt Judgment at a time when the trial court retained jurisdiction over the case, pursuant to the parties' agreement, "to ensure compliance with the [Consent Judgment] until all of the parties' obligations have been completed." Thus, at the time the garnishment application was filed, the amount the State had agreed to accept in satisfaction of its judgment was capable of ascertainment from the record. *See Cross v. Cross*, 30 S.W.3d 233, 236–37 (Mo.App. E.D.2000) (holding that judgment which ordered parties to pay certain debts but which did not list the amount of each debt was sufficiently definite to be enforced by execution where record of evidence at trial included the specific amounts of each debt); *Sanders v. Sanders*, 933 S.W.2d 898, 902 (Mo.App. E.D.1996) (holding that an "obscure judgment . . . may be construed with reference to the pleadings and record, and where on the whole record its sense can be clearly ascertained, the judgment will be upheld"). If Law Firm and Cain disputed the amount the garnishment sought to collect because it was not supported by the record, they were free to move to quash the garnishment on this basis.[12]

Finally, Law Firm and Cain argue that the garnishment application must be construed as an effort to enforce the Contempt Judgment because the Consent Judgment was a contract which could only be enforced by a breach of contract action. It is true that a consent judgment is a contract. *Household Fin. Corp.*, 213 S.W.3d at 196. However, a consent judgment is to be accorded the same effect as a judgment entered following judicial determination of a dispute. *Id.* Where a con-

---

11. At oral argument, Cain suggested that the State's designation of an "original amount of judgment" lower than the full amount awarded in the Consent Judgment rendered the garnishment ineffective. Cain did not make this argument in her brief, however, and offers no authority to support it. We are aware of no authority that a garnishor's recitation of an amount less than the full amount of the underlying judgment would render a garnishment inoperative. *Cf. Orem v. Orem*, 149 S.W.3d 589, 594 (Mo.App. W.D.2004) ("If a judgment creditor seeks an execution and garnishment in aid thereof in an amount in excess of the judgment amount actually due, the debtor may move to quash, and the court should quash only so much thereof as is in excess of the amount actually due.") (citing *Hardin v. Hardin*, 512 S.W.2d 851, 855 (Mo. App.1974)).

12. *See* footnote 11.

tract of settlement does not require court approval to render the terms of the contract enforceable, court "approval" of the contract does not summarily merge the contract with the decree, leaving the contract of settlement subject to independent enforcement via a breach of contract action. *See, e.g., Telge v. Telge,* 677 S.W.2d 403, 406–07 (Mo.App. W.D.1984); *Nelson v. Nelson,* 516 S.W.2d 574, 578 (Mo.App. 1974); *Welsh v. Welsh,* 230 Mo.App. 1006, 93 S.W.2d 264, 270 (1936). Even in such circumstances, however, the parties can elect to have a settlement contract incorporated into a decree, in which case the contract merges with the decree, and is thereafter only subject to enforcement or modification by the court. *See, e.g., Toth v. Toth,* 483 S.W.2d 417, 422 (Mo.App. 1972); *Jenks v. Jenks,* 385 S.W.2d 370, 375 (Mo.App.1965). Whether a settlement agreement remains contractual or becomes decretal depends on the intention of the parties. *See, e.g., Yalem v. Yalem,* 801 S.W.2d 439, 441 (Mo.App. E.D.1990); *Kirk v. Kirk,* 598 S.W.2d 153, 155 (Mo.App. E.D.1980); *Jenks,* 385 S.W.2d at 374–75.

▮▮▮ Here, the Consent Judgment, which was signed by both Cain and the State, was submitted to the trial court for consideration, resulting in the entry of agreed trial court findings of fact and conclusions of law. The Consent Judgment provided for the entry of a judgment in favor of the State, a provision that is inconsistent with the intent to treat the Consent Judgment as a mere contract. The Consent Judgment was signed by the trial judge, reflecting its entry as a "judgment." The Consent Judgment expressed that it could only be modified in writing and with

court approval, a provision inconsistent with the intent to treat the judgment as a contract. Finally, and significantly, the parties agreed the trial court would retain jurisdiction over the matter to ensure compliance with the provisions of the Consent Judgment—an agreement that is rendered meaningless unless the parties intended their agreement to be decretal. We reject, therefore, Law Firm and Cain's argument that the Consent Judgment was not susceptible to enforcement or execution as a judgment.

In light of the foregoing, we conclude that the garnishment application properly sought to execute on the Consent Judgment, which was sufficiently definite to be enforced. The State's second point on appeal is granted. We correspondingly conclude that the trial court erroneously characterized the garnishment as an attempt to execute on the Contempt Judgment. In that respect, the State's first point on appeal is granted.

Our conclusions render it unnecessary to address the balance of the State's first point on appeal which questions whether the trial court erroneously quashed the garnishment because it believed the Contempt Judgment to be void for lack of personal jurisdiction. The Contempt Judgment is superfluous to the State's garnishment application, and any findings or conclusions made by the trial court regarding the Contempt Judgment's validity were unnecessary to its consideration of the motion to quash the garnishment.[13]

### Point Three

The State's third point on appeal asserts that the trial court erred in finding that

---

13. Though we do not address whether the Contempt Judgment is void for lack of personal jurisdiction, our reversal and remand of the trial court's Judgment has the practical effect of vacating the Judgment in its entirety, including the trial court's finding that the Contempt Judgment is void for lack of personal jurisdiction. That issue remains subject to future determination and appellate review, if necessary, should the Contempt Judgment be enforced.

the garnishment interrogatories may require Law Firm to reveal information that is protected by the attorney-client privilege. The State argues that the interrogatories merely asked Law Firm to state how much of Cain's money it was holding, and that this information is not privileged. Law Firm and Cain argue on appeal that if a portion of the funds were in Law Firm's custody for the purpose of retaining Law Firm to represent Cain, then revealing that information would be a violation of attorney-client privilege because it would require Law Firm to reveal fee arrangements. Further, Law Firm and Cain claim that answering whether Law Firm has knowledge of any others claiming an interest in Cain's funds would require Law Firm to reveal attorney-client privileged information.

The trial court's conclusion that all of the garnishment interrogatories sought attorney-client protected information served as an independent basis for quashing the garnishment. We are thus required to analyze the State's third point on appeal notwithstanding our conclusion that the trial court erroneously characterized the garnishment as an attempt by the State to enforce the Contempt Judgment.

▬▬▬▬ Whether an interrogatory seeks information that is protected by the attorney-client privilege presents a question of law. *State ex rel. Behrendt v. Neill,* 337 S.W.3d 727, 729 (Mo.App. E.D. 2011). We review questions of law *de novo. Hoit v. Rankin,* 320 S.W.3d 761, 765 (Mo.App. W.D.2010).

▬▬▬▬ "The attorney-client privilege prohibits 'the discovery of confidential communications, oral or written, between an attorney and his client with reference to litigation pending or contemplated.' " *Ratcliff v. Sprint Mo., Inc.,* 261 S.W.3d 534,

546 (Mo.App. W.D.2008) (quoting *State ex rel. Terminal R.R. Ass'n of St. Louis v. Flynn,* 363 Mo. 1065, 257 S.W.2d 69, 73 (1953)). The party asserting attorney-client privilege bears the burden of proof to demonstrate that the privilege applies. *State ex rel. Ford Motor Co. v. Westbrooke,* 151 S.W.3d 364, 367 (Mo. banc 2004). A blanket assertion of privilege is not sufficient. *Id.* Instead, "[t]he party claiming the privilege must supply the court with sufficient information to enable the court to determine that each element of the privilege is satisfied." *State ex rel. Dixon v. Darnold,* 939 S.W.2d 66, 70 (Mo. App. S.D.1997). The elements of attorney-client privilege are: (1) the existence of an attorney-client relationship at the time the communication was made or advice was given; and (2) the attorney-client relationship existed with respect to the subject matter of the communication or advice. *State v. Pride,* 1 S.W.3d 494, 505 (Mo.App. W.D.1999).

Here, the State submitted standard form interrogatories with its application for garnishment.[14] Simplified, the garnishment interrogatories required Law Firm, the garnishee, to provide the following information:

1. Whether Law Firm has in its possession or under its control any property, money, or other effects of Cain and if so the amount or value of the property.

2. Whether Law Firm owes Cain any money, and if not yet due when the obligation will become due, and if the amount due is for wages certain other information about the earnings.

3. Whether Cain is within Law Firm's employ.

4. Whether Law Firm is bound under contract to pay Cain money not yet due, and if so when the amount becomes due.

14. *See* footnote 7.

5. Whether Law Firm knows of any person or entity other than Cain who claims an ownership interest in property identified in response to interrogatories 1, 2, or 4.

The motion to quash the garnishment filed by Law Firm and Cain argued "[t]hat all of the information requested in the aforesaid garnishment, including, but not limited to the interrogatories attached thereto, seek confidential and privileged information, between [Cain] and her attorney, and therefore, the same is privileged, and not subject to disclosure." In a reply to suggestions in opposition to the motion, Law Firm and Cain alleged:

If [Law Firm] is forced to answer the interrogatories, it may require [Law Firm] to reveal potentially privileged information concerning the client's instructions relating to the issues in this case. The disclosure of information under the interrogatories may also reveal privileged information concerning the fee arrangements between the attorney and his client. This information is not subject to disclosure to the State or anyone else, unless Cain waives it.... *Lawyers should not be subject to garnishment for the alleged debt of their clients.*

 The objection to the garnishment interrogatories amounted to nothing more than a blanket assertion of the attorney-client privilege on the hypothetically stated basis that "potentially privileged information" "may be required" to be revealed. The vague objection was facially insufficient to sustain Law Firm and Cain's burden as the parties asserting the privilege to demonstrate the existence of the privilege. *See State ex rel. Ford Motor Co.,* 151 S.W.3d at 367.

 As acknowledged during oral argument, that Law Firm and Cain are not attempting to articulate a specific manner in which the garnishment interrogatories violate the attorney-client privilege given the facts in this case. Rather, Law Firm and Cain are advocating for the adoption of a bright-line rule exempting attorneys from the obligation to respond to garnishments designed to attach client funds in the attorney's possession. Though Law Firm and Cain generally describe the complications presented when an attorney is served with a garnishment given the ethical obligation to maintain confidential information and the constraints of the attorney-client privilege, they afford this court no authority supporting a bright-line exemption. In fact, the attorney-client privilege does not afford an attorney with a blanket exemption from garnishment proceedings seeking to attach client funds. To the contrary:

[I]n the usual instance, an attorney accepting his clients funds, or collecting obligations owed his client, is considered merely the agent of his client, and is no better position with respect to immunity from attachment of such funds than an ordinary agent. Therefore, counsel attempting to resist the attachment of such funds should not rely on the attorney-client relationship as a defense.... Nor should the argument be relied on that counsel is entitled to retain the funds to secure payment of any fees due or to become due in any business for which he has been retained by the client before the service of process on him. It is likely that the court would look upon the situation as an attempted fraud on creditors, since it would permit a debtor to put his property beyond their reach pending payment for services which the attorney might in the future render the client.... Counsel therefore must show something more than a mere agency if he is to defend successfully against gar-

nishment of his client's funds in counsel's possession.

K.R. Newell, Annotation, *Funds in Hands of His Attorney as Subject of Attachment or Garnishment by Client's Creditor*, 35 A.L.R.3d 1094, 1098–99 (1971) (collecting cases).

These generally stated principles are consistent with Missouri law. When an attorney holds funds that belong to a client, the attorney is obligated to promptly deliver those funds to the client. *See* Rule 4–1.15(i) ("Except as provided by this Rule 4–1.15 or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client . . . any funds or other property that the client . . . is entitled to receive . . . ."). In effect, an attorney holding a client's funds stands in a debtor/creditor relationship with the client. Section 525.010 provides:

> All persons shall be subject to garnishment, on attachment or execution, who are named as garnishees in the writ, or have in their possession goods, moneys or effects of the defendant not actually seized by the officer, and all debtors of the defendant, and such others as the plaintiff or his attorney shall direct to be summoned as garnishees.

Section 525.010 affords no class of debtors "safe haven" from its reach. Thus, section 525.010 subjects an attorney to garnishment from a client's creditors to the extent that the attorney is a debtor to the client. *Cf. K–M Auto Supply, Inc. v. Reno*, 236 A.2d 706, 706 (Del.1967) (noting that an attorney holding unearned fees in a client trust account is holding funds belonging to the client that are subject to garnishment).

■ Thus, as in every case where the disclosure of information is objected to on the basis of the attorney-client privilege, the party asserting the burden must demonstrate that the privilege in fact exists, and that the nature of the requested disclosure will violate the privilege in light of the specific facts and circumstances involved. *State v. Smith*, 979 S.W.2d 215, 220 (Mo.App. S.D.1998) (citing *Chamberlin v. Mo. Elections Comm'n*, 540 S.W.2d 876, 881 (Mo. banc 1976) (holding that "[w]hether the attorney-client privilege protects a particular communication . . . must be determined on a case-to-case basis")). As we have already explained, Law Firm and Cain's generic, non-specific, and hypothetical assertions that the information sought by the garnishment interrogatories "may" require the disclosure of "potentially privileged" information did not meet this burden.

■ In their Brief, Law Firm and Cain generally argue, without elaboration, that the garnishment interrogatories *might* require them to disclose fee arrangements, and/or information about third party claims communicated to Law Firm by Cain. These allegations remain, however, non-specific and hypothetical. A hypothetical claim of privilege is not sufficient to satisfy the burden of proof to establish privilege. *See State ex rel. Ford Motor Co.*, 151 S.W.3d at 367. Law Firm and Cain have failed to submit any detailed information, *in camera* or otherwise, sufficient to permit the trial court or this court to meaningfully evaluate the claim of privilege, as it is required to do on a case-by-case basis. *State ex rel. Dixon*, 939 S.W.2d at 70.

■ Moreover, beyond reference to general principles obliging lawyers to maintain client confidences, Law Firm and Cain fail to cite to any authority for the proposition that fee arrangements and/or knowledge about third party claims to funds held by an attorney for a client are summarily subject to protection from disclosure by the attorney-client privilege.

In contrast, there is ample authority to the contrary.

■ For example, we made reference, *supra*, to Rule 4–1.15(i), which requires prompt delivery to a client of any funds or property belonging to the client which come into the possession of an attorney. That same rule also provides that:

> Upon receiving funds or other property in which a . . . third person has an interest, a lawyer shall promptly notify the client or third person. Except as provided in this Rule 4–1.15 or otherwise permitted by law or by this agreement with the client, a lawyer shall promptly deliver to the . . . third person any funds or other property that the . . . third person is entitled to receive and, upon request by the . . . third person, shall promptly render a full accounting regarding such property.

We fail to appreciate how Law Firm can maintain a general objection on the basis of the attorney-client privilege to the disclosure of any knowledge it has as to third party claims to funds belonging to Cain in Law Firm's possession when this Rule of Professional Conduct obligates the Law Firm to protect the known rights of third persons in funds or property it receives. Moreover, the existence of third party claims against the Commission's settlement proceeds would be discoverable information if sought from Cain. Discoverable information cannot be made privileged simply by reciting it to an attorney. *State ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d 379, 385 (Mo. banc 1978).

Moreover, the great weight of authority on the subject recognizes that with rare exception, the mere fact of the existence of a relationship between an attorney and a client, and the nature of the fee arrangements between the attorney and a client are not attorney-client privileged communications. *See, e.g., United States v. Sindel*, 53 F.3d 874, 876 (8th Cir.1995) ("Although federal common law of attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal representation, it ordinarily does not apply to client identity and fee information." (citations omitted)); *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir.1995) ("Generally, the attorney-client privilege does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement. This is so because the attorney-client privilege applies only to confidential professional communications, and the payment of fees is usually incidental to the attorney-client relationship." (citations omitted)); *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir.1990) ("As a general principle, information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a confidential communication between the attorney and the client." (internal quotation marks omitted)); *In re Criminal Investigation No. 1/242Q*, 326 Md. 1, 602 A.2d 1220, 1222–23 (1992) ("The overwhelming weight of authority holds that the attorney-client privilege is generally not violated by requiring disclosure of the payment of attorney's fees and expenses. Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating. . . . For the most part, fee arrangements are collateral to, not an integral part of, the fiduciary relationship." (citations and internal quotation marks omitted)).[15] Ironi-

---

15. Cain does not specifically allege facts that might bring her within any of the exceptions to this general rule. For example, she does not allege that disclosure of information con-

cally, and in keeping with this general principle, Law Firm disclosed its fee arrangement with Cain when it provided the State with a settlement statement itemizing the amount due to be paid Cain from the settlement with the Commission after reducing the settlement sum by Law Firm's attorney's fees and cost.

 We are not persuaded, therefore, even presuming we treat Law Firm's and Cain's general objections as sufficient to meaningfully assert a claim of attorney-client privilege, that the garnishment interrogatories require Law Firm to reveal privileged communications. Law Firm and Cain intersperse in their Brief discussion of various Rules of Professional Conduct addressing an attorney's obligation not to reveal client information. In so doing, Law Firm and Cain fail to appreciate the distinction between an attorney's duties under the Rules of Professional Conduct and the attorney-client privilege. In fact, Comment [3] to Rule 4–1.6, the principal rule forbidding an attorney from disclosing "information relating to the representation of a client unless the client gives informed assent," recognizes the distinction and provides:

> The attorney-client privilege . . . appl[ies] in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.

Thus, the mere fact that a lawyer may not be permitted by the Rules of Professional Conduct to reveal information independent of legal compulsion to do so does not mean that the information is protected from discovery by the attorney-client privilege. *See, e.g., In re Criminal Investigation No. 1/242Q,* 602 A.2d at 1222 ("The subjective intent or wishes of the parties cannot create a privilege where none exists. Even though the clients wish the fee information to be kept confidential, this is but a threshold requirement, and we still must determine whether it is privileged. Our inquiry, therefore, is not whether the broader rules of confidentiality protect the fee information sought in the instant case, but whether the narrower attorney-client privilege protects the information."). As explained, *supra,* Law Firm and Cain have not met their burden to demonstrate that the attorney-client privilege protects the information requested by the garnishment interrogatories from disclosure required by law. *See* section 525.010 et. seq.

 We also observe that it is settled in Missouri that "a party may not claim the privilege where the dealing and communication between a non-lawyer and a lawyer concern non-legal matters." *Smith,* 979 S.W.2d at 220. Thus, it is generally accepted that " 'where the attorney acts as a collection agent, the communications between him and his client are not protected by the privilege.' " *Avoletta v. Danforth,* No. 3:11CV1126, 2012 WL 3113151, *2 (D.Conn. July 31, 2012) (quoting *In re Shapiro,* 381 F.Supp. 21, 22 (N.D.Ill.1974)); *see also Ralls,* 52 F.3d at 226 ("[T]he attorney-client relationship does not exist where the attorney acts as a mere conduit for the transfer of money."); *Hueck v. State,* 590 N.E.2d 581, 584 (Ind. Ct.App.1992) ("The attorney-client rela-

---

cerning the sums held by Law Firm would incriminate her in criminal activity, or disclose any particular confidential communication. And, Cain does not argue, except in insufficient summary and general terms, that

garnishment of the funds held by the Law Firm would interfere with the Law Firm's representation of her in this or any other matter.

tionship does not exist where its ... purpose is ... to use the attorney as a mere conduit for the payment of money."). The settlement between the Commission and Cain obliged the Commission to pay Cain. Law Firm's status as the conduit for payment of Cain's settlement may well have been designed to protect Law Firm's ability to collect its attorney's fees and costs from the settlement proceeds. But that does not detract from the fact that Law Firm's receipt of the proceeds of the Commission's settlement with Cain made Law Firm no more than a conduit for the payment of money to Cain. We are not persuaded that this "relationship" suffices to support a claim of attorney-client privilege.

In fact, to hold otherwise would permit judgment debtors to willfully and deliberately protect assets from collection merely by placing property in the hands of an attorney. It is settled in Missouri that though a "privileged communication may be a shield of defense ... it cannot be used as a sword or weapon of offense to enable persons to carry out [improper conduct]." *Burger v. Crocker*, 392 S.W.2d 640, 645 (Mo.App.1965); *cf. In re Marriage of Rubio*, No. 10CA0912, 2011 WL 3613710, at *2 (Colo.App.2011) (noting that an attorney holding unearned fees in a client trust account is subject to garnishment as "a contrary rule would invite unethical practice").

We conclude that the trial court erroneously quashed the garnishment on the basis of the attorney-client privilege.

### Conclusion

The trial court's Judgment is reversed. This matter is remanded for further proceedings consistent with our Opinion. On remand, the trial court shall vacate the Judgment, and Law Firm shall file and serve verified answers to the garnishment interrogatories in the manner required by Rule 90.07(b) within ten days of the issuance of our mandate.

All concur.