LEONARD WHEELOCK *vs.* CHARLES TUTTLE & Trustee.

Where it appeared from the answers of a person summoned as trustee, an attorney and counsellor at law, that his client had placed in his hands money and effects to the amount of one hundred dollars for services performed, and engaged to be performed, and the supposed trustee declared that the sum was no more than sufficient for the agreed purpose; *Held*, that he was entitled to be discharged.

THIS case came before this court by appeal from the decision of the court of common pleas, *Merrick*, J. on the following answer of S. B. I. Goddard, Esq. the person summoned as trustee.

" On the afternoon of the 27th day of June, 1850, Tuttle who was then confined, charged with stealing two horses, &c., retained me as his counsel in said cases, and stated he had eighty-eight dollars and fifty-three cents in money in the hands of the jailer; one silver watch, worth eight or ten dollars, one steel chain, one breastpin worth one dollar, one ring worth one dollar and fifty cents.  He wished me to take the property, save enough for my fees out of it, and keep the balance for him, and I accordingly took said property; some days afterwards, and before the service of said writ upon me, I had a long conversation with Tuttle; he told me he was charged with stealing horses in Bridgeport, in Connecticut, and other places, and wished to retain me generally as his attorney to defend him in the cases which were liable to come up against him · at the

same time told me he was sued by a Boston man, and the case would be entered at the September term then following, and desired me to defend it, which I accordingly did; said case was entered in September, and was finally arranged by me without a trial. Upon the writ in said case certain property was attached, and I had considerable trouble about the matter before said trustee writ was served upon me. Tuttle's money was given to me at the jail. After my second interview with him, I told him I would do the best I could for him in his cases, and promised to arrange some of his business matters for him in Connecticut, which I have done. I told him I had not money enough to do all he desired me to do for him, and he promised to remunerate me for my trouble when he was able. I made one journey to Boston, and spent one day on his business before July 9, 1850, the day of the service of the writ upon me. Tuttle further retained me, July the 3d, to act as counsel for him in procuring a pardon for him after he should be sentenced to the state's prison, he having then, under my advice, concluded to plead guilty to the three indictments then pending against him.

I had not charged Tuttle on my books, except as a memorandum of expenses and trouble which had accrued up to July 9, 1850. I made the charges in this way for the purpose of showing to Tuttle the amounts charged for each separate case of his I had in charge. The amount in my hands will not be sufficient to pay my reasonable charges and expenses for services already done, and to be performed in cases in which I was retained and promised to look after, before the service of said trustee writ upon me."

*R. Newton*, for the plaintiff.

*J. H. Matthews*, for the trustee.

Cushing, J. There is a series of chancery cases, several being cited in the argument, and others collected in Eden's notes to *Newman* v. *Payne*, 4 Brown, Ch. C. 350, which clearly prove that, in England, courts of equity will relieve against a mortgage or bond given by a client to his attorney for unliquidated or future costs.

In the above case, such was the decision of the Lord Chan-

cellor (Loughborough). So also of the court of exchequer in *Pitcher* v. *Rigby*, 9 Price, 79. Lord Eldon assumes the same doctrine in *Jones* v. *Tripp*, Jacob, 322.

In commenting on these decisions, Sir Thomas Plumer, in *Williams* v. *Piggott*, Jacob, 598, evidently has doubts, especially because such security is not void by statute; but the question was eventually decided in that case by Lord Gifford, on the authority of *Pitcher* v. *Rigby*. It must therefore, we agree with the plaintiff's counsel in thinking, be taken as the rule in England.

We do not know whether it would be so held here. The rights and duties of an attorney in England are very different from what they are in Massachusetts. There, attorneys constitute a distinct profession; here they do not. There, a deep and broad line is drawn between attorneys and counsel, and the ways in which each of the two distinct classes of professional persons shall obtain compensation for services; here there is none. In England, we apprehend, if a sum of money were placed in the hands of counsel, either as a retainer, or to cover fees for services not yet performed, but to be performed, it could not be made the subject of attachment, or of relief in a court of equity. So also here, we doubt whether this court has power to annul a security entered into, in good faith and for a reasonable sum, and on proper conditions, between an attorney and his client, to secure compensation for services not yet performed, but contracted to be performed.

We do not speak now of malpractice; that presents different considerations. If a contract between client and attorney come within the provisions of the statute against the purchase of rights of action, or advances on the same; Rev. Sts. *c.* 89, § 5; or if the facts in a case show an unlawful consideration or undertaking, *Wheeler* v. *Russell*, 17 Mass. 258; or constitute a collusive or dishonest bargain, so as to be void at common law; *Allen* v. *Hawks*, 13 Pick. 83; or involve considerations in themselves immoral or dishonorable—such a case would have to be decided on its own merits. In such a case of manifest wrong, we should feel inclined to exert our power

11 *

to its fullest extent for the vindication of the honor of the profession and the purity of legal administration.

But there is no authority for assuming that the payment of proper fees to counsel in advance, either in England or in Massachusetts, is unlawful; quite the contrary. And in tne present case, we are by no means prepared to adjudge that the sum of one hundred dollars more or less, which Tuttle placed in the hands of Mr. Goddard, and which Mr. Goddard swears he holds for services performed, or engaged to be performed, to the full value of that sum, is an amount so large, or that the facts on the face of them are so questionable, as to imply a secret trust on the part of Mr. Goddard for the benefit of Tuttle, as against his creditors. We should have to assume this, in order to come to the conclusion of charging him as trustee, against his own declarations on oath. He must therefore be discharged.

The grounds of our decision, however, are particular tu the facts in the case. If the answer of a supposed trustee should disclose the possession of a sum of money or other effects, held professedly only as security for services to be performed, whether professional services or services in any common industrial pursuit or labor, the sum being larger apparently than the proposed object warranted, or there being other circumstances of suspicion, we should be very likely to come to a conclusion the reverse of that reached on the present occasion.

*Trustee discharged.*