INVESTMENT RESEARCH INSTITUTE, INC., Appellee,

v.

SHERBANK MARKETING, INC.; International Business Information, Inc., et al., Appellants.

[Cite as *Invest. Research Inst., Inc. v. Sherbank Marketing, Inc.* (1998), 134 Ohio App.3d 478.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970207.

Decided May 1, 1998.

*Lindhorst & Dreidame* and *Barry F. Fagel* for appellee.

*Cohen, Todd, Kite & Standford*, LLC, and *Donald J. Rafferty,* for appellants.

---

GORMAN, Judge.

This appeal arises from a post-judgment garnishment proceeding. Garnishments in the amount of $78,109.04 were issued to the defendants-appellants, International Business Systems Information, Inc. ("IBI") and Walter A. Lynch, its president, directing the two to pay any accounts payable IBI had with Sherbank Marketing Services, Inc. ("Sherbank") to the plaintiff-appellee, Investment Research Institute, Inc. ("IRI"). The trial court found that IBI and Lynch deliberately circumvented the garnishments by paying $50,000 to Sherbank's receiver through IBI's lawyer. Consequently, pursuant to R.C. 2716.21, the trial court entered a judgment of $50,000 against IBI and Lynch in favor of IRI.

In their two assignments of error, IBI and Lynch assert that the trial court erred by (1) finding that funds paid to Sherbank's receiver were actually in possession of IBI and Lynch and therefore subject to the garnishment order, and (2) failing to recognize the release issued by Sherbank's receiver. For the reasons that follow, we disagree and thus affirm.

I

IBI was the publisher of a twice-monthly publication entitled *International Currency Report.* The periodical was distributed strictly on a subscription basis. IBI is an Ohio corporation with only two shareholders, Lynch and his wife, holding sixty percent and forty percent of the shares respectively. Although IBI at one time had eight employees, Lynch testified at his deposition that the financial condition of the company was "perilous" and that "[t]he company has only one employee, and I am it."

Sherbank, a Canadian company, advanced money to IBI to pay for its direct-mail marketing efforts with regard to specific campaign projects. Sherbank would advance the funds either directly to IBI or to IBI's vendors. IBI would then pay the moneys that a campaign generated back to Sherbank to the extent of the money it had advanced. If the revenues exceeded the amount advanced, IBI made money on the campaign project. If the revenues fell short of the amount advanced, then IBI was left owing the difference to Sherbank. Sherbank also was paid a project fee on each campaign project.

Lynch testified that, as of March 1995, IBI owed Sherbank between $132,000 and $152,000. He testified that, because of IBI's perilous financial condition, the company was often not able to turn over all the revenues it owed Sherbank from

a particular campaign project but instead would use the money to pay its other bills and then would pay Sherbank what it could, usually in the form of periodic checks in the amount of $1,000 or $2,000. Sherbank, apparently, tolerated this arrangement. In this sense, Lynch testified, the money IBI owed Sherbank was only due when IBI was able to pay it. He testified, however, that, regardless of IBI's ability to pay, the money remained owed to Sherbank.

On November 20, 1995, Sherbank was placed into a receivership action in the Ontario Court (General Division) in Bankruptcy. Approximately one month later, after it had obtained a judgment against Sherbank in the amount of $78,109.04, IRI served an affidavit and order of garnishment of property other than personal earnings on IBI. The garnishment sought any accounts receivable and any and all other monies IBI owed Sherbank. IBI responded by seeking to dismiss the garnishment, and when that was denied, it filed an answer that denied that it had any money, property, or credits subject to the garnishment.[1] Approximately three months later, IRI served a similar garnishment on Lynch with respect to any part of the debt IBI owed Sherbank that he had personally guaranteed, as well as any money that he owed Sherbank in his individual capacity. Lynch also answered that there were no such funds.

Shortly thereafter, Lynch received a demand letter from the attorneys for the Canadian receiver of Sherbank, claiming that IBI owed it $143,701.89. IBI and Lynch entered into settlement negotiations with the attorneys, who agreed to accept $50,000 as full payment for the debt. Because IBI and Lynch had no money at the time, however, Lynch approached both his wife and his father for the money. In his deposition, Lynch testified that both agreed to help him, his wife offering to loan him $30,000 and his father offering $20,000. However, Lynch testified, after discussing the matter with his attorney, Lynch advised both his father and his wife not to send him the money directly. Instead, Lynch's attorney drafted identical letters for the signature of Lynch's wife and father. Each letter enclosed a check ($20,000 from Lynch's father and $30,000 from Lynch's wife) made payable to the law firm of which Lynch's lawyer was a member. The letter stated that the check was being tendered to the law firm to be paid to Sherbank on certain conditions:

1. That Sherbank execute and deliver a release of claims it possessed against IBI and Lynch;

2. That Lynch execute and deliver to the sender, either his wife or father, a promissory note for the amount of the check; and

---

1. IBI later clarified its position in an addendum indicating that its answer claiming that it held no money, credits, or property of Sherbank was made as of the date of the garnishment.

3. That "IBI shall recognize the payments of these funds to Sherbank as a reduction of Lynch's note payable to IBI."

The letters further stated: "In the event any of the above conditions are not satisfied, you are hereby directed to return the funds to me promptly with a statement indicating which of the conditions failed."

Lynch signed promissory notes for $20,000 and $30,000 in favor of his wife and father. The notes were dated the same day as the letters sent to the law firm bearing the checks. The $50,000 was then tendered by the law firm to Sherbank in exchange for a release of its claims against Lynch, IBI, and Lynch's wife.

Upon discovery that the money had been paid to Sherbank, IRI filed contempt motions in the trial court, arguing that both IBI and Lynch were in contempt of the garnishment notices by, in essence, laundering payment to Sherbank through their attorney.

A hearing was held on the motions. On February 5, 1997, the trial court issued its findings of facts and conclusions of law. The trial court found that the $50,000 paid to Sherbank was the same $50,000 that Lynch had borrowed from his wife and father, that the attorney for Lynch and IBI was acting as their agent when he received the $50,000 in checks issued to his law firm, and that the $50,000 was therefore in the possession of Lynch and IBI notwithstanding the terms of its delivery. Based on these factual findings, the trial court concluded that the process of having the checks sent to the law firm was a scheme designed to "circumvent the garnishments." Accordingly, the trial court, pursuant to R.C. 2716.21(C) and (D), entered judgment of $50,000 against Lynch and IBI and furthermore stated that the release obtained as a result of the payment would not be honored.

## II

In their first assignment of error, IBI and Lynch assert that the trial court erred by entering judgment of $50,000 against them based upon its factual finding that the $50,000 paid to Sherbank's receiver was money in their possession. Specifically, they argue that letters drafted by their attorney for the signature of Lynch's wife and father established an escrow account and that, once deposited in the escrow, the $50,000 was beyond their control and subject only to the written terms of the escrow. Such an argument, however, misconstrues the central issue in this case, which is not whether an escrow was created, but whether a garnishee can use his attorney as an escrow in order to willfully disregard a garnishment.

Initially, before beginning our analysis, we note our agreement with the trial court's factual finding that the procedure employed by IBI, Lynch, and their

attorney was a scheme devised solely for the purpose of circumventing the garnishments. IBI and Lynch had arranged through their attorney to settle their $143,701.89 debt to Sherbank for $50,000, a saving of $93,701.89. Both Lynch's wife and father were willing to loan him the money. Standing in the way, however, were the garnishments requiring that any money that IBI or Lynch owed Sherbank (up to $78,109.04) be paid to IRI. The steps that Lynch and his attorney then took can only be seen as a deliberate attempt to defy the garnishment. In his deposition testimony, Lynch made clear that, after discussions with his attorney, it was he who directed his wife and father not to send him the money directly but to instead transfer the funds to his attorney's law firm. Lynch also made clear that it was his attorney, acting on his behalf, who drew up the letters that enclosed the checks and contained the conditions of payment. The fact that the letters purported to originate from Lynch's wife and father was an attempt to disguise this fact. The trial court was well within bounds to conclude that this entire transaction was, at its core, a sham and that the only conditions placed on the delivery of the funds to the law firm were those imposed by Lynch, acting through the agency of his attorney.

Notwithstanding the transparent nature of what was done here, Lynch and IBI attack as "factually and legally unsupportable" the trial court's finding that their attorney and the law firm of which he was a member acted as their agents in accepting the $50,000. They argue instead that the law firm was acting under the "strictly circumscribed" agency as "depositary or escrow agent" and not as an agent for Lynch and IBI.

The basis of IBI's and Lynch's argument are cases that have, in their words, "treated favorably the dual capacity of escrow agents." Concededly, Ohio courts have recognized that, *as a general proposition,* an agent of a grantee may be made the depositary of an escrow. See, *e.g., Cincinnati, Wilmington & Zanesville R.R. Co. v. Iliff* (1862), 13 Ohio St. 235, 253, 1862 WL 13. None of the cases cited by Lynch and IBI, however, remotely sanctions the use of an escrow to circumvent a pre-existing garnishment. To illustrate, *Iliff* concerned a property owner who conveyed a right of way on his property to a railroad agent upon certain conditions that were not met, and the issue of dual capacity arose only in the context of whether there was delivery of the conveyance.

Similarly, in support of the proposition that an "attorney may act in dual capacity as attorney for one of the parties and as an escrow agent for both of the parties," IBI and Lynch cite the case of *Saad v. Rodriguez* (1986), 30 Ohio App.3d 156, 30 OBR 275, 506 N.E.2d 1230. *Saad,* however, dealt with a home buyer's use of her attorney as an escrow agent for the real estate transaction, and the issue was simply what statute of limitations applied for the breach of the escrow agreement by the attorney—that which governed malpractice or that

which governed contracts in writing. The court held that, because the attorney was acting in a dual capacity as attorney for the homebuyer and escrow agent for both parties, those actions that the attorney took which were "purely escrow work performed for both parties" were subject to the statute of limitations for breach of contract. *Id.* at 159, 30 OBR at 278–279, 506 N.E.2d at 1233. As with *Iliff,* there is nothing in *Saad* that sanctions the use of one's attorney as an escrow to circumvent or defy a garnishment.

Perhaps because of the ethical concerns involved, we have, commendably, found no other case in Ohio in which a garnishee and his attorney have attempted the same or a similar tactic as was employed here. It is clear, however, that the general rule is that a client's funds are not immunized from garnishment simply because they are in the hands of his or her attorney. The cases supporting this proposition are old, but numerous. See, *e.g., Tucker v. Butts* (1849), 6 Ga. 580; *Coburn v. Ansart* (1807), 3 Mass. 319; see, also, Annotation, *Funds in Hands of his Attorney as Subject of Attachment or Garnishment by Client's Creditor* (1996), 35 A.L.R.3d 1094, 1971 WL 28403 (collecting cases). As noted by the annotation on this subject, the exception to this general rule is where the attorney is holding client funds in some special capacity, such as an escrow. *Id.* However, the exception has been generally applied only in those cases involving attorney-escrows that were established *before* the garnishment for legitimate purposes other than merely circumventing the garnishment, such as the settlement of previous unrelated litigation, see *K–M Auto Supply, Inc. v. Reno* (Del.1967), 236 A.2d 706, or pursuant to an earlier court decree. See *Kusens v. Johannesburg* (Fla.App.1966), 182 So.2d 468. None of the cases applying the exception involves an attorney-escrow established *after* the garnishment in a transparent attempt to defy the court's order.

In sum, we hold that the procedure here was, as found by the court, a clear attempt to evade the garnishment and that the use of such a procedure has no support in the law of either escrow or garnishment. The trial court's finding that the $50,000 remained in the possession of Lynch and IBI or their attorneys as agents is, on the other hand, supported by the evidence, since it is clear that the $50,000 was money borrowed by Lynch and disbursed according to terms that he and his lawyer devised. IBI's and Lynch's first assignment of error is, therefore, overruled.

### III

In their second assignment of error, Lynch and IBI contend that the trial court erred when it refused to recognize the release obtained by them as a result of their payment of the $50,000 to the Canadian receiver for Sherbank. Specifically, they argue that the trial court's "visceral, unreasoned rejection" of the

release has "no basis in law or fact." According to them, there is "no evidence in the record to support a finding of invalidity or unenforceability," and the trial court's rejection of the release was "absurd."

We resoundingly disagree. Obviously, the success of this assignment hinges largely on the success of the first assignment, which we have already rejected. We note that at the same time they describe the trial court's rejection of the release as "absurd," IBI and Lynch continue to challenge the trial court's finding that they acted to circumvent the garnishment, steadfastly maintaining that they were not "parties to the Escrow Letters and the escrow agreements" and that it is "unclear how Lynch and IBI could be said to have 'utilized' these agreements to circumvent the Garnishments."

R.C. 2716.21(C) provides:

"If, in garnishee's answer, a garnishee admits an indebtedness to the judgment debtor, and the court orders the payment of it in full or in part to the judgment creditor, and the garnishee fails to pay according to the order, execution may issue on the order."

Given the plain meaning of this statute, we find no error in the court entering judgment against Lynch and IBI in the amount of $50,000.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, P.J., and DOAN, J., concur.