[Cite as *Prokos v. Hines*, 2014-Ohio-1416.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| LAISA PROKOS, | : | |
| | : | |
| Plaintiff, | : | Case No. 12CA31 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| PAM HINES, | : | ENTRY |
| | : | |
| Defendant/Third-Party | : | |
| Plaintiff, | : | **Released: 03/28/14** |
| | : | |
| and | : | |
| | : | |
| NICKOS PROKOS | : | |
| | : | |
| Third-Party Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| L. JACKSON HENNIGER, | : | |
| | : | |
| Appellant. | : | |

_____

| | |
|---|---|
| LAISA PROKOS, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| DEMETRIOS PROKOS, | : |
| | : |
| Defendant-Appellee, | : |
| | : |
| and | : |
| | : |

NICKOS PROKOS,                          :
                                        :
    Defendant,                          :
                                        :
    and                                 :
                                        :
L. JACKSON HENNIGER                     :
                                        :
    Appellant.                          :
_____

APPEARANCES:

David J. Winkelmann, Athens, Ohio, for Appellant L. Jackson Henniger.

John P. Lavelle and Robert R. Rittenhouse, Lavelle and Associates, Athens, Ohio, for Appellee Demetrios Prokos.

Jeffrey Finley, Eachus & Finley, Gallipolis, Ohio, for the Estate of Laisa Prokos.
_____

McFarland, J.

{¶1} L. Jackson Henniger, (hereinafter "Appellant") appeals the "Judgment Entry on Garnishment and Findings of Contempt" filed October 16, 2012, in which the trial court held that funds held in Appellant's IOLTA account belonged to Appellant's client Kucik, and were subject to garnishment. Upon review of the record, we find the trial court's judgment is supported by competent, credible evidence. Because we find no error in the trial court's judgment, we overrule Appellant's sole assignment of error.

FACTS

{¶2} The underlying facts of this matter culminated in a lengthy jury trial in the Athens County Common Pleas Court in March-May 2010. Appellee is Demetrios Prokos, (hereinafter "Prokos"). For purposes of this appeal, it is sufficient to note Prokos obtained a judgment against Barry Kucik, Barry M. Kucik, and the Kucik Revocable Living Trust (hereinafter "Kucik") for approximately $600,000.00, after the jury returned a verdict against Kucik for fraud. Appellant undertook representation of Kucik on appeal. In December 2010, Prokos filed a garnishment action, seeking to garnish Kucik's funds held in Appellant's IOLTA account.[1]

{¶3} The garnished funds, and various motions for contempt and attorney fees filed against Appellant during the post-trial proceedings, have been the subject of multiple hearings. The evidence in the record demonstrates Kucik paid $80,000 in funds into Appellant's IOLTA account on or about May 21, 2010. Prokos' garnishment action against Kucik was filed in late December 2010. On December 30, 2010, the court ordered Appellant to file an answer of garnishee. The trial court also ordered Appellant to safeguard anything of value belonging to Kucik. Appellant was

---

[1] "IOLTA" refers to accounts known as "Interest on Lawyer's Trust Accounts." Pursuant to Ohio Prof. Rule 1.15, attorneys are to keep client funds in a separate interest-bearing account in an institution authorized to do business in Ohio and situated where the lawyer's office is located. The trust account at issue here was held in the name of "Henniger and Associates, L.P.A."

served the garnishment complaint on January 11, 2011.  At that time,

Appellant's IOLTA account contained over $30,000.00.[2]

{¶4}  On January 13, 2011, Appellant requested a hearing.  On

January 18, 2011, Appellant filed an answer to the garnishment.  He also

filed a motion to quash, motion to stay execution of judgment,[3] and a motion

for recusal.[4]  On January 19, 2011, Prokos filed a motion to compel an

answer to the garnishment and to comply with the trial court's order.  Also

on January 19, 2011, Appellant paid himself $26,328.50 from the subject

funds.

{¶5}  On January 20, 2011, the trial court held a hearing on

Appellant's request.  Appellant did not bring documentation with him to the

hearing.  The trial court verbally ordered Appellant to leave all monies

belonging to Kucik in the trust account until further order of the court.  On

January 21, 2011, Appellant filed an amended answer asserting: (1) the

funds in the IOLTA account were protected by the attorney-client privilege;

(2) the funds were exempt from garnishment; (3) the funds belonged to the

garnishee or his wife; and, (4) the trial court's ordered raised due process

concerns.  On March 21, 2011, Prokos served a subpoena on Appellant

---

[2] The record reveals $50,000 had been withdrawn from the IOLTA account by November 15, 2010.
[3] Kucik later filed a motion to stay the garnishment proceedings, which was denied by the trial court. Kucik then filed a motion for stay in the court of appeals, which was granted on the condition that Kucik post a supersedeas bond.  However, bond was never posted and the appeal was dismissed.
[4] Kucik's motion that the trial judge recuse himself was denied by the Supreme Court.

seeking information regarding the IOLTA account, as well as a copy of the attorney representation agreement with Kucik.  Kucik and Appellant filed a motion to quash the subpoena.

{¶6}  In May 2011, Prokos filed charges of contempt against Appellant and a motion to show cause.  On July 12, 2011, the trial court held a hearing on Prokos' charges and motion.  The subject of Appellant's motion to quash the subpoena was also addressed.  On July 13, 2011, the trial court issued an entry in pertinent part as follows:

> A review of the subpoena reveals it was issued March 11, 2011. It was served March 14, 2011.  L. Jackson Henniger filed a Motion to Quash the subpoena on March 15, 2011.  He did not raise the typographical error issue in this Motion.  In the body of the subpoena it requested compliance by March 30, 2010. The Court made a finding during the hearing that this was an insufficient justification to fail to respond (or seek clarification_ to a validly issued and served subpoena as a reasonable person would understand the date requested for compliance was March 30, 2011 or would seek clarification… Other than the argument that he could not comply with the subpoena because of the typographical error in the stated year, L. Jackson Henniger declined to present any witnesses or evidence.
>
> The Court hereby continues the ORDER announced during the January 20, 2011 hearing…L. Jackson Henniger is ORDERED to refrain from taking any money out of his IOLTA trust account that is associated with the Kucik Defendants and that he leave all monies attributed to any of the Kucik defendants in place in his IOLTA account until further ORDER of the court.

On July 13, 2011, Appellant re-deposited the $26,328.50 amount he had previously withdrawn.

{¶7} On July 20, 2011, the trial court issued a nunc pro tunc entry ordering Appellant to file an accounting under seal of his trust account.[5] On July 25, 2011, Appellant and Kucik appealed the nunc pro tunc order. On July 27, 2011, Appellant filed a copy of the representation agreement with Kucik for purposes of the appeal. On December 15, 2011, this court found the July 20, 2011 nunc pro tunc order was not a final appealable order.

{¶8} On April 30, 2012, the Internal Revenue Service (IRS) levied against the $30,000 in Appellant's IOLTA account. On May 23, 2012, transcripts from the 2010 trial were completed and filed. On June 29, 2012, Prokos filed a contempt charge against Appellant based on the July 20, 2011 nunc pro tunc order to file trust account records under seal.

{¶9} On August 23, 2012, the trial court held a hearing on contempt regarding two issues: (1) Appellant's failure to provide his trust records pursuant to the court order and, (2) Appellant's failure to safeguard the money as ordered. Again, at the August 23, 2012 contempt hearing, Appellant failed to bring his trust account records. He also failed to bring documents pertaining to the IRS levy on his funds.

---

[5] In the nunc pro tunc order, the parties were also ordered to supplement their memoranda of law as to the purpose for the money deposited in the IOLTA account. Also, the names of Appellant's clients were to be redacted from these records, except for the Kucik defendants.

{¶10} At the August 23rd hearing, Appellant testified he had discussions with an IRS field agent about his obligations and had advised the IRS that the $30,000 in his trust account belonged to him. Appellant further directed the IRS to the IOLTA account at Century National Bank. Appellant did not put on any witnesses or evidence. At the conclusion of the hearing, Prokos argued Appellant's actions with regard to the money did not show prudence and did show disregard of the court's two previous orders to safeguard the money. Prokos further argued the proper procedure, when the IRS became involved, would have been to notify the judgment creditor, the Court, and take steps so that all parties could be heard.

{¶11} Appellant provided the IRS records on August 24, 2012. These records demonstrated that on April 13, 2012, the IRS notified Appellant it was levying the trust account at Century National Bank. Appellant had returned a waiver of due process hearing to the IRS and had written on the waiver: "It is my money." The trial court found Appellant in contempt of the July 20, 2011 nunc pro tunc order and ordered Appellant to file an accounting and provide documentation of the IRS levy.

{¶12} On August 27, 2012, Prokos filed another motion for contempt, alleging Appellant violated the court's July 2011 order to safeguard the money associated with Kucik. On September 14, 2012, the trial court held a

hearing on this issue of Appellant's alleged disobedience of the August 23, 2012 order of the court.[6]  The trial court also heard testimony about the legal representation contract between Appellant and Kucik and the merits of the garnishment issue.

{¶13}  At the September, 2012 hearing, Appellant testified the contract signed June 9, 2010, was to memorialize an earlier verbal agreement.  Previously, $80,000.00 had been paid into Appellant's trust account.   Appellant received the garnishment notice in late December 2010. Appellant testified $50,000 was for his attorney services on appeal and $30,000 was for producing a transcript for purposes of the appeal. Appellant testified there was a provisional condition that the $30,000 would belong to Appellant in the event it was not used for the transcript. Appellant testified at the time he signed the contract, he understood he had a pecuniary interest in the $30,000.  Appellant testified at the time the IRS levied on the $30,000, the transcripts had been paid for.  At the end of the hearing, all parties agreed the evidence would be incorporated into an upcoming October hearing.

{¶14}  On October 4, 2012, the trial court held another hearing on cross motions for attorney fees and Appellant's motions for contempt for

---

[6] Although Appellant filed the documents with the court, Appellant did not receive the information within 24 hours as ordered.

violation of the December 30, 2011 and July 13, 2011 orders.  On October 16, 2012, the trial court issued its journal entry on garnishment and contempt.  The court found: (1) Prokos was entitled to garnish the $30,000 of Kucik's funds held in Appellant's IOLTA account on December 30, 2010; (2) Appellant was in contempt for failing to comply with various orders of the court; and (3) Appellant owed Prokos attorney fees for expenses he caused Prokos to incur.

{¶15}  This appeal regarding Prokos' entitlement to garnish the funds of Kucik held in Appellant's IOLTA account on December 30, 2010, followed.

## ASSIGNMENT OF ERROR

I.      THE TRIAL COURT'S REFUSAL TO GIVE EFFECT TO HENNIGER'S INTEREST IN THE FUNDS ORIGINALLY EARMARKED FOR PAYMENT FOR A TRANSCRIPT, IF THOSE FUNDS WERE NOT USED TO PAY FOR THE TRANSCRIPT CONSTITUTED ERROR.

## STANDARD OF REVIEW

{¶16}  In reviewing a trial court's judgment, it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact.  *Shemo v. Mayfields Hts.,* 88 Ohio St. 3d 7, 2000-Ohio-258, 722 N.E.2d 1018; *Seasons Coal Co., v. Cleveland,* 10 Ohio St. 3d 77, 461 N.E.2d 1273 (1984).  Furthermore, judgments supported by competent,

credible evidence going to the material elements of the case will not be

disturbed as being against the manifest weight of the evidence. *Shemo,*

*supra; C.E. Morris Co. v. Foley Constr. Co,* 54 Ohio St. 2d 279, 376 N.E.2d

578 (1978), syllabus. See, also, *First Bank of Marietta v. Mascrete, Inc., et*

*al.,* 125 Ohio App. 3d 257, 708 N.E. 2d 262, (4th Dist. 1998).

LEGAL ANALYSIS

**{¶17}** Appellant relies on (1) the evidence of the legal representation

agreement between Kucik and Appellant dated June 9, 2010, and (2) the

evidence that the appeal transcripts were paid for by another source to

support his argument that he owned the $30,000 Appellee garnished. The

financial terms of the contract are set forth in pertinent part as follows:

2.a. Client has paid to the trust account of Attorney the sum of $80,000 as consideration for this agreement as entered into on 5/21/2010.[7]

> b. Fixed Fee. Client shall pay the fixed non-refundable fee ("Fee") of Fifty Thousand Dollars ($50,000) to Attorney, which shall be deducted from the aforesaid $80,000; provided that the non-refundable fee is subject to the following rule, and Client hereby is advised of the same* * *.

> Additionally, in the event that the Writ of Prohibition is granted without the cost of a transcript, the sum of $30,000 shall be added to the Fixed Fee, in consideration for bearing the additional retrial responsibilities called for above.

---

[7] The date "5/21/10" was handwritten into the contract.

The fee is nonrefundable and earned upon receipt subject to the qualifications set forth above as to the ethical rules noted.

c. $30,000 of the said $80,000 shall be escrowed for a transcript for appeal, but if it does not need to be used for this, as where the Writ of Prohibition is granted, then the $30,000 shall be deemed part of the Fixed Fee for the purposes set forth above.

And at paragraph 11:

In the event that any creditor, receiver or Court in Bankruptcy attaches or successfully lays claim to any or all funds paid to Attorney by Client, the representation shall cease and Attorney may withdraw from representation.

{¶18}  Appellee contends the trial court correctly determined the Kucik funds were subject to garnishment.  Appellee argues: (1) the fact that the Kucik funds were in Appellant's trust account reflects that they belonged to the Kucik defendants; (2) the authenticity of the legal representation agreement between Kucik and Appellant is suspect; (3) at the time of notice of garnishment, pursuant to the alleged terms of the contract for legal services, Appellant did not have an interest in the $30,000 contained in his trust account.

{¶19}  Appellant argues because of the 2010 garnishment action, Kucik made other arrangements to pay the cost of transcript fees for purposes of appealing the verdict in favor of Prokos.  The transcripts were completed on May 23, 2012 and were paid for from another source. Appellant argues he had a pecuniary interest in the funds at the time they

were garnished in December 2010.  This argument might be more well-received if Appellant had produced the legal agreement earlier in the proceedings and had testified to considerably more persuasive, reliable knowledge as to the procurement of the appeal transcripts.

{¶20}  We begin by citing the reasoning on which the trial court based its decision:

> "The Court finds that the $30,000 in the IOLTA account was the property of the Kucik Defendants and, therefore, was subject to garnishment.  First, its placement in Henniger's IOLTA account per Haddasah, parag. 9, is indicative of its status as client (Kucik) money/property, not Henniger's. Second, the transcript was not complete until May 2012.  In addition, the Plaintiff could have garnished the $30,000 earlier if Henniger had complied with previous orders of this Court to retain the money and had not consented to the I.R.S. levy on the IOLTA account.
>
> Henniger has not complied with Court orders and the notice of garnishment that he retain the money in his IOLTA account until the Court decided if it could be garnished.  He did not produce the ostensibly then-existing agreement between himself and Kucik Defendants at the January 20, 2011 hearing.
>
> The Plaintiff correctly argued that moneys held by an attorney are not immune from garnishment. (Jan. 20, 2011, Trans. pp. 10-14)  The Plaintiff also correctly stated that Henniger did not state a legal reason why the funds were exempt. (Jan. 20, 2011, Tran. p. 30)

{¶21}  The first district court of appeals in *Hadassah v. Schwartz,* 197 Ohio App. 3d 94, 2011-Ohio-5247, 966 N.E.2d 298, began by discussing garnishment actions in general at ¶ 6, stating:

"In a garnishment action, a creditor proceeds to satisfy a debt owed to that creditor by collecting a debtor's property in the possession of a third person, called the garnishee. *In re Estate of Mason,* 109 Ohio St. 3d 532, 2006-Ohio-3256, 849 N.E. 2d 998, ¶ 18, citing *Union Properties, Inc. v. Patterson,* 143 Ohio St. 192, 195, 54 N.E. 2d 668 (1944)(superseded by probate statute). As explained in the garnishment statutes, R.C. 2716.01 et seq., '[a]person who obtains a judgment against another person may garnish the property, other than personal earnings, of the person against whom judgment was obtained, if the property is in the possession of a person other than the person against whom judgment was obtained, only ***300 through a proceeding in garnishment and only in accordance with this chapter.'" R.C. 2715.01(B).

{¶22} The first district opinion also quoted the rule in *Investment Research Institute, Inc., v. Sherbank Marketing, Inc.* 134 Ohio App. 3d 478, 731 N.E. 2d 690 (1st Dist. 1998), that "[a]debtor's funds generally are not exempt from garnishment merely because the funds are placed with an attorney."

{¶23} We agree with the trial court that *Hadassah* is particularly instructive to our considerations herein. Hadassah was a judgment creditor who brought a garnishment action to garnish $150,000.00 in a law firm's attorney IOLTA trust account. The trial court permitted garnishment of the $150,000.00 belonging to Schwartz. Schwartz appealed, arguing the trial court erred by ordering garnishment of his funds in the IOLTA account because those funds had been designated as a retainer for legal services and were no longer being held for settlement purposes.

{¶24} In *Hadassah,* the law firm, BG&L, had asserted in its answer that the money Schwartz paid the firm had been deposited in the firm's IOLTA account and the funds served as a retainer for legal services. The appellate court noted neither Schwartz nor the firm ever produced the alleged retainer agreement and nothing in the record indicated the law firm acquired an ownership interest in the retainer, or that the retainer was nonrefundable.

{¶25} At the outset, we first agree with the trial court when it pointed out Appellant has never stated a legal reason why the funds were exempt from garnishment. *Hadassah, ¶* at *10,* acknowledged that property in the form of an attorney-fee retainer does not appear in the somewhat lengthy list of exempted property in R.C. 2329.66. The appellate court further noted garnishment is a purely statutory procedure and the appellate court was not in the position to create exceptions to the garnishment statute. *Hadassah,* ¶ 12; see, *Ohio Bell Tel. Co. v. Antonelli,* 29 Ohio St. 3d 9, 11, 504 N.E. 2d 717 (1987). Analyzing the case sub judice has necessitated review of decisions involving garnishment of attorney accounts in other jurisdictions. For instance, in *Arnold, et al., vs. First American Holdgs.,* 982 So.2d 628, (2008), the Supreme Court of Florida interpreted its state's

garnishment statute and the obligations it imposed on third parties, including attorneys served with writs of garnishment.  As in *Ohio Bell Tel. Co. vs. Antonelli, supra,* the Florida high court also noted that under the Florida garnishment statutes, attorney trust accounts are not exempted.

{¶26}  We further agree with the trial court, and Appellee, that the fact the funds were in Appellant's trust account is persuasive evidence that the funds belonged to Appellant's client, Kucik.  Citing *Hadassah,* the trial court noted the placement of the funds in Appellant's IOLTA account was indicative of its status as client property.  The *Hadassah* opinion in particular noted the Ohio Rules of Professional Conduct require that property belonging to a client or a third party be kept in a client's trust account and that property belonging to an attorney be kept separate from a client's property. *Hadassah*, ¶ 9; Prof. R. 1.15; *Disciplinary Counsel v. Miller,* 126 Ohio St. 3d 221, 2010-Ohio-3287, 932 N.E. 2d 323, ¶ 8.  The *Hadassah* opinion pointed out that the law firm kept Schwartz's $150,000.00 retainer in an IOLTA account, *98 which indicates that, at that specific point in time, Schwartz and not the firm, retained the

ownership rights over the retainer.  Therefore, reasoned the court, the retainer was property subject to garnishment under R.C. 2716.01.

{¶27}  Finally, like the trial court, we are also unpersuaded by the evidence of the contract between Appellant and Kucik.  Although the contract date is June 9, 2010, Appellant did not produce the agreement where it would have been relevant, at the initial hearing on January 20, 2011.  Appellant did not produce the agreement in response to Appellee's March 2011 subpoena for records.  The agreement was filed on July 27, 2011, for purposes of appeal of the nunc pro tunc order, yet not placed into evidence by Appellant. Further, the agreement was not provided by Appellant at the July 12, 2012 hearing.

{¶28}  At the September 14, 2012 hearing, Appellant testified as to the relevant dates of the contract, the contract's terms, and the language of the contract which, he asserts, gave him ownership of the $30,000. In the October 16, 2012 decision, the trial court also noted the "ostensibly then-existing agreement" was not produced much earlier. Appellee argues this is "suspect."  We must agree, especially, in light of Appellant's evasive testimony on the second part of his

argument, that per the contract, he was entitled to the funds because other arrangements had been made to pay for the appeal transcripts.

{¶29} On cross-examination at the September 14, 2012 hearing, Appellant's testimony regarding his knowledge as to payment of the transcripts, presents as evasive:

Q:     Mr. Henniger, according to the records of the Court, the transcript of which you are speaking of was filed May 23, 2012.  Your account was garnished by the IRS, levied by the IRS April of 2012.  Were you aware of that sir?

A:     Is that your testimony?  I, I don't know what your saying is true.

Q:     I am saying were you aware the transcript was filed May 23, 2012? And there is a file stamped copy of it right there in the Judge's file?

A:     I can't say as I'm particularly aware of that date no.  My understanding was that it had been paid for and that it was done.

Appellant further testified:

Q:     Now after the garnishment was filed, other arrangements were made to pay the court reporters through funds through a Florida individual who happens to be attorney.  A Mr. John Cardaris, or some name like that. Would that be correct?

A:     I don't have any direct knowledge of the particulars of that arrangement.  My understanding is that such an arrangement may have been made.  I think that's how it was paid for.

Q:     You've never been replaced as the attorney of record for this appeal, correct?

A:     I have not.

Q:      You're testifying to this Court that you have no knowledge on how the transcript for this appeal that you had to write was going to be paid for?

BY ATTORNEY WINKELMANN:   Objection that question has been asked and answered.

A:      I answered his question.

BY THE JUDGE:  Just a minute. Overruled.

A:      I'm sorry.

Q:      I said as attorney of record for this appeal, are you testifying to this Court that you don't have any knowledge on how the transcript was going to be paid for, for the appeal that you are supposed to be writing that is due September 20th?

A:      Well I've answered your question, but I'll attempt to respond to the question you have just asked as well.  Which is slightly different.  I didn't say I had no knowledge of it.  I said my understanding of it was, that the transcript was being paid for through the offices of another person.  But I didn't oversee that or I was not privy to that exact arrangement.

Appellant later testified:

Q:      If your client was the one making these payments through this agent in Florida, to these court reporters, you're telling this court you were unaware of that?

A:      I didn't say that.  I said I'm unaware of the exact arrangement.  I'm aware that he had made some arrangement to pay for it.

Q.      Do you know how many different payments it took him to pay for the transcript and over what period of time?

A:      I am not.

Q.      And I am going to represent to you that he still owed money for the transcript in May of 2012 after the IRS levied your account.  Would you agree or disagree with that?

A:    I don't know exactly.  I thought it was paid for.

Q:    You simply don't know.

A:    That's what I said.

{¶30}  The facts showing the alleged existence of an agreement that was not produced until much later in the proceedings, along with Appellant's testimony about the transcripts for an appeal which he adamantly claimed to be preparing, apparently raised a credibility issue with the trial court.  It is well-settled the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact.  *State v. Frazier,* 73 Ohio St. 3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant,* 67 Ohio St. 3d 465, 477, 1993-Ohio-171, 620 N.E. 2d 50.  The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St. 3d 77, 80, 461 N.E. 2d 1273 (1984).  Based on the evidence contained in the record, we will not second-guess the trial judge's credibility determination in this matter.

{¶31}  In the alternative, Appellant has asserted an equitable argument, that no attorney would take a case to the court of appeals if the client were unable to pay for the work due to a garnishment, to support his

claim of error. In the *Hadassah* appeal, Schwartz made the argument that garnishment of his law firm's IOLTA account deprived him of representation and that the deprivation was unfair in the absence of evidence that Schwartz had engaged in collusion or concealment to avoid garnishment. As indicated above, the appellate court based its decision, in part, on the fact that a statutory exemption for attorneys and attorney accounts has not been created. And, although the appellate court in *Hadassah* was not completely unsympathetic with Schwartz's argument that garnishment of an IOLTA account might deprive a client of legal representation, the court suggested a client in Schwartz's position could avoid such a result by reaching a representation agreement with the attorney that gives the attorney an ownership interest in some or all of the legal fee upon receipt. The court emphasized as a contract giving the attorney an ownership interest in the legal fee deposited might be permissible, as long as the agreement was not used as a tool to evade garnishment and did not place the attorney in the position of receiving an excessive fee. *Hadassah,* ¶ 13; see, Prof.Cond.R. 1.5.

{¶32} In our research of the resolution of these issues in other jurisdictions, a recurring theme, throughout various stages of garnishment proceedings, has been whether or not those attempting to defend or avoid

garnishment acted in a collusive or evasive manner. For instance, as far back

as 1852, in *Wheelock v. Tuttle*, 64 Mass. 123, 1852 WL 4624 (1852), the

Supreme Court of Massachusetts noted: "There is no authority for assuming

that the payment of proper fees to counsel in advance, [***], is unlawful.

However, the court also cautioned:

> "[I]f the facts in a case show an unlawful consideration or
> undertaking (internal citation omitted); or constitute a collusive
> or dishonest bargain, so as to be void at common law; (internal
> citation omitted); or involve considerations in themselves
> immoral or dishonorable- - such a case would have to be
> decided on its own merits.

In *Crain v. Gould,* 46 Ill. 293, 1867 WL 5371 (Ill.) (1867), the Supreme

Court of Illinois held "When the answer of a garnishee is vague and evasive

in stating the amount of his claim, it will be construed most strongly against

him."  More recently, in *Abbott v. Cunningham*, 377 S.W.3d 565, 2012 Ky.

App. LEXIS 249, a Kentucky appellate court concluded that a "flat fee,"

such as the ones accepted in [the underlying criminal case], is earned

immediately by the attorney due to the inherent risk the attorney takes by

accepting the fee and representation of the client regardless of the time and

effort which could be involved.  In a concurring opinion, another judge

cautioned:

> "If counsel's answer should, however, disclose that he holds
> money to secure payment of services which will be performed,
> and it appears that the sum held is larger than he could

reasonably expect as his fee, or if it appears that evasive tactics are being resorted to, the court will undoubtedly permit garnishment of the funds. [Footnotes omitted]." (reversed on other grounds by *Abbott v. Cunningtham,* 2011-SC-000291-DG, 2013 Ky. LEXIS 367.

And, in *State ex rel. Koster v. Cain,* 383 S.W.3d 105, 2012 Mo. App. LEXIS 1438 (C.A. Mo. W.D.Div. III) 2012, the State of Missouri appealed from a trial court's judgment that sustained a motion to quash a garnishment filed by a law firm garnishee. The law firm had defended the action, in part, on the basis of attorney-client privilege. In rendering its decision, the appellate court noted :

> "In fact, the attorney-client privilege does not afford an attorney with a blanket exemption from garnishment proceedings seeking to attach client funds…Nor should the argument be relied on that counsel is entitled to retain the funds to secure payment of any fees due or to become due in any business for which he has been retained by the client before the service of process on him. It is likely that the court would look upon the situation as an attempted fraud on creditors, since it would permit a debtor to put his property beyond their reach pending payment for services which the attorney might in the future render the client…."

{¶33} In his brief, Appellee posits additional arguments that (1) even if the contract for legal services was authentic, the $30,000 fixed fee was unenforceable, and (2) under the terms of the purported representation agreement at paragraph 11, the very filing of the garnishment entitled the Kucik defendants to a refund of the $30,000 held in Appellant's trust

account.  Given the trial court's reasoning, and the case law clearly supporting it, we decline to additionally consider whether or not the $30,000 fixed fee was excessive and unenforceable.  The trial court proceedings produced a voluminous record, court appearances were frequent, and the issues complex.  Appellee's second argument, that under the terms of the agreement the filing of the garnishment entitled the Kucik defendants to a refund, may also have merit.  Suffice it to say, based on our review of the record, we believe the trial court had competent credible evidence to support its finding that the $30,000.00 held in Appellant's IOLTA account was subject to garnishment.  As such, we affirm the judgment of the trial court and overrule the assignment of error.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Hoover, J.:  Concur in Judgment and Opinion.


For the Court,


BY:   _____
        Matthew W. McFarland, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**